R. C. A. SERVICE COMPANY and Zurich Insurance Company, Appellants,

v.

Mrs. Fred LIGGETT and the Alaska Workmen's Compensation Board, Appellees.

No. 445.

Supreme Court of Alaska.

Aug. 10, 1964.

George M. Yeager, Fairbanks, R. Boochever, Juneau, for appellants.

Harris R. Bullerwell, of Taylor & Bullerwell, Fairbanks, for appellees.

Before NESBETT, Chief Justice, and DIMOND and AREND, Justices.

AREND, Justice.

This is an appeal by the employer, R.C.A. Service Company, and its insurance carrier from a decision of the superior court affirming an award of compensation by the Alaska Workmen's Compensation Board to the dependents of Fred Liggett, who was killed in a plane crash on the way home to Fairbanks from his jobsite at Clear, Alaska. The Board had based the award upon a legal conclusion that the decedent's death arose out of and in the course of his employment with R.C.A., because at the time of the crash he was returning from a special errand made on behalf of the employer. R.C.A. and its insurance carrier as appellants contend that the trial court erred in concluding that Fred Liggett's death arose out of and in the course of his employment and in finding that the facts of the case brought it within the special errand doctrine, an exception to the rule that generally injuries which occur when an employee is going to and from his place of employment are not covered by workmen's compensation acts.

The basic pertinent facts as they appear in the record before us are as follows: Fred Liggett, deceased, worked for R.C.A. for about six months—July through December 25, 1960, as leadman (foreman) of the metals trade shop at Clear. He usually worked nine hours a day, Monday through Saturday, with Sunday as his day off. Wednesday night and Saturday night through Sunday night each week he generally spent at his home in Fairbanks with his wife and children. Only once prior to December 25 did he work at his job on Sunday. Except for the time spent at home as just stated, the decedent lived at R.C.A.'s installation at Clear where he was furnished room and board by the employer. It was optional with R.C.A.'s employees whether or not they did any overtime work, although shop work normally required that a foreman or some higher supervisory official be present whenever men were working overtime in the shop.

The decedent's immediate supervisor on the job was one Fred Sutton. During the week preceding Sunday, December 25, Sutton asked Fred Liggett and Samuel Bestafka, foreman in another shop, to come to his office, where he then requested Liggett to work on Christmas Day which happened to be the coming Sunday, for the reason that he, Sutton, would be gone to spend Christmas week with his family in New Jersey.

On Saturday evening, December 24, the decedent went to Fairbanks and spent the night with his family. The following morning his wife drove him to the airport at about nine o'clock. There he boarded a plane which returned him to Clear. At approximately 3:30 p. m., he called his wife in Fairbanks to inform her that he would be "coming out" after five o'clock that evening to have Christmas dinner with the family. He stopped work at 4:30 p. m., the appointed time,[1] and shortly thereafter proceeded by chartered private aircraft from the vicinity of Clear for Fairbanks. His share of the charter fare was $10 which he paid without any contribution from R.C.A. After taking off, the aircraft accidentally crashed about ten miles from Clear, causing Fred Liggett's death.

While in Fairbanks on the Wednesday night preceding Christmas Day, the decedent informed his wife that he would have to work on the holiday for the reason that his supervisor, Fred Sutton, "was going to the States on a vacation." He did not appear pleased at the prospect and stated: "These are the breaks of being a boss" [evidently referring to Fred Sutton], "when you're not up, you have to fill in when required to do so." The work performed by him at the shop on Christmas Day was no different from that performed by him during the regular work days.

The question presented is whether the foregoing facts constituted substantial evidence from which it could be reasonably concluded that the work performed or any of the other activities engaged in by Fred Liggett on December 25, 1960, brought his case within the special errand exception to the going and coming rule so that his death can be said to have arisen out of and in the course of his employment. In the light of the factual background and from our examination of the entire record in this case, we believe that the answer to the question must be in the negative.[2]

The Alaska Workmen's Compensation Act provides that "if the injury causes death" compensation shall be given as specified,[3] and defines "injury" as "injury or death arising out of and in the course of employment."[4] The burden of proving that an injury arose out of and in the course of the employment rests upon the claimant for compensation,[5] in this case the widow, Mrs. Fred Liggett.

Although Alaska has no case directly on point, it is well settled in most jurisdictions that injuries occurring off the employer's premises while the employee is going to or coming from work do not arise

1. The work time records indicated that the decedent worked nine hours on Christmas Day and there was testimony that he was to work that day from 7:00 a. m. until 4:30 p. m., with a half hour off for lunch.

2. See Keiner v. City of Anchorage, 378 P.2d 406 (Alaska 1963), wherein we stated at page 411 that in dealing with the issue of whether there is any reasonable basis in fact for an administrative agency's finding "we apply the rule that the board's findings should not be reversed if in the light of the whole record they are supported by substantial evidence, i. e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

3. SLA 1959, ch. 193, § 8, as amended by SLA 1962, ch. 9, § 1 (now AS 23.30.-215).

4. SLA 1959, ch. 193, § 2, as amended by SLA 1962, ch. 148 (now AS 23.30.265).

5. Sunny Point Packing Co. v. Faigh, 63 F.2d 921, 924, 5 Alaska 691 (9th Cir. 1933).

in the course of his employment.[6] We believe that the rule is reasonable and logical, and that it draws a practical line for determining where the employer's liability to pay compensation begins and ends.

There are of course exceptions to the rule,[7] one of them being the "special errand" exception. But even in the case of a special errand the explanation of the exception is found in the principle that the journey is an inherent part of the service,[8] and as stated by Professor Larson, that it "involves a trip in which the bother and effort of the trip itself is an important part of what the employee is actually compensated for."[9] Illustrative of the point are the facts and the decision in the Iowa case of Kyle v. Greene High School.[10] There the janitor of the school received a call after his regular working hours asking him to come to the school to turn on the lights for a basketball game as there seemed to be something wrong with the lights on the gymnasium floor. On his way he was struck by an automobile and injured. The reviewing court regarded the special service or errand as incidental to the nature of the janitor's employment and in the interest of his employer and, therefore, affirmed an award of compensation made below.[11]

In contrast with the Kyle case are the facts and decision in another Iowa case, Otto v. Independent School Dist.,[12] involving a janitor on his way to work in the morning. One of this janitor's duties was to open the schoolhouse at the start of the day. In affirming a denial of compensation below the court remarked:

"We cannot conclude that claimant here was performing any duty incident to his employment when going to work in the morning, any more than if he had been a day laborer whose working hours were fixed by contract. The *situs* of his work was fixed, and he could do nothing until he arrived there. Assuming that he might on occasion be required to perform some special service or errand requiring his presence on the street for its performance, that was not his situation when he suffered this injury." [Italics not ours.][13]

6. Butler v. Industrial Comm'n, 50 Ariz. 516, 73 P.2d 703, 705 (1937); Newman v. Congregation of Mercy and Truth, 196 Pa.Super. 350, 175 A.2d 160 (1961); 1 Larson, Workmen's Compensation, § 15.11 (1952).

7. See the two cases cited in note 6, supra.

8. Professor Larson says of this exception that, regardless of whether the journey to perform the special errand is separately compensated for, it is within the exception if it "is in itself a substantial part of the service for which the worker is employed." 1 Larson, Workmen's Compensation, § 16.00 at 222 (1952).

9. 1 Larson, Workmen's Compensation, § 16.10 at 224 (1952).

10. 208 Iowa 1037, 226 N.W. 71 (1929).

11. Commenting upon the Kyle decision, Larson states: "Note that in this case the duty performed was, in one sense, a normal one for the janitor; yet the essence of the service performed in the special journey was the making of the trip itself. * * *" 1 Larson, op. cit. supra note 9, § 16.10 at 224.

12. 237 Iowa 991, 23 N.W.2d 915 (1946).

13. Id. 23 N.W.2d at 919. The dissenting justices in this case took the position that the service performed by the janitor was different from that of an ordinary day laborer in that he had to open the building so that the employer's business could be conducted. (23 N.W.2d at 920–921) Not so, says Professor Larson, for: "There are many employees who, because of their key position in an operation, might well be equally essential to the successful carrying-on of the employer's business. Relative indispensability can hardly be the test of status while coming and going. This leaves the question whether the journey itself was an important part of the service; and since it was nothing but the usual five-block walk which the janitor always had to take, there is no real distinction from the going and coming of any ordinary employee." 1 Larson, Workmen's Compensation, § 16.11 at 225 (1952).

Similarly in Jarek's Case,[14] where a porter was asked to stay an extra half-hour after his regular quitting time to fill in for the foreman who was away and the porter received permission to walk home to tell his wife that he would be late so that she would not worry, it was held that the trip was solely for the employee's benefit and an injury to the porter in the course of the trip was held non-compensable. Significant to us are these words in the opinion at page 534 of 93 N.E.2d: "So far as appears the trip was made entirely because the employee wished to make it."

A case similar in a number of respects to the one under consideration here, but presenting facts more favorable to the employee, is Garbo v. P. N. Bruner Granitoid Co.[15] Garbo, it appears, was regularly employed in St. Louis. His employer had a special job to do at Wright City, approximately fifty miles distant. Six men were assigned to the job, including Garbo. They rode with Garbo in his car to the place of employment and the employer paid the expenses of travel. The men stayed in Wright City through Friday night and were offered room and board in that city over the weekend if they desired to stay there until work recommenced on Monday morning. Garbo preferred, however, to return to his family home and he drove back to St. Louis with the other men again as passengers. There was a dispute as to whether he was to be reimbursed for his car expense, the Industrial Commission apparently finding that he was not so to be reimbursed on this trip although he was to have been reimbursed for taking the men back at the end of the period of employment. He was injured on the trip to St. Louis, just as in the subject case Mr. Liggett was injured on his way to Fairbanks. The referee who heard the case found for the employee, but this decision was reversed by the Industrial Commission. The matter was appealed to the Circuit Court which entered judgment in favor of the claimant but the Court of Appeals reversed holding that the injury did

not arise out of and in the course of employment. The court pointed out:

"If the right to transportation, or the right to reimbursement for the expense of the operation of the employee's own car, is given the employee by the terms of his contract, and his injury is received in connection with such transportation, then his injury is by accident arising out of and in the course of his employment, and is therefore compensable under the act. But on the other hand, if the transportation is not furnished by the employer but is provided by the employee himself for his own personal convenience, it amounts to no part of the employment, and any injury received in the course of such transportation will afford no basis for compensation. Sanderson v. Producers Commission Ass'n, 360 Mo. 571, 229 S.W.2d 563; Sylcox v. National Lead Co., 225 Mo.App. 543, 38 S.W.2d 497.

"So in this case, if Garbo had been injured on the initial trip out to Wright City, or if, had he remained on the job until its completion, he had been injured on the way back to St. Louis, the employer and insurer would admit his right to compensation. * * *

"But unfortunately for Garbo, he was not injured on the initial trip out to Wright City, or upon a trip back to St. Louis after completion of the job. On the contrary, his injury was received during the interval between the end of work on Friday and the resumption of work on the following Monday, while on a mission of his own (to be with his family over the week end), which had no direct relation to his actual employment. While the fact that his employment took him out to Wright City would have made it necessary that he return to St. Louis when the work was done, it did not require him to be on his way back to St. Louis upon the occasion of the accident. That trip, how-

14. 326 Mass. 182, 93 N.E.2d 533 (1950).

15. 249 S.W.2d 477 (Mo.Ct.App.1952).

ever understandable, was purely one of his own choice and for his own private purpose and convenience. * * *" (249 S.W.2d at 480).

Similarly in the subject case, Fred Liggett's trip to join his family for Christmas dinner was purely one of his own choice and for his own private purpose and convenience. His employer took no part in arranging or paying for the transportation to Fairbanks and exercised no control over the private carrier chartered by the decedent. We can find neither an express nor an implied agreement in the record that Fred Liggett's services would cover the period from the time that he left Clear for Fairbanks on the fatal Christmas Day flight until his next return to Clear.[16] The decedent was definitely not performing any service for R.C.A. after he quit his job at the appointed hour of 4:30 p. m. on December 25, 1960, departed from the premises of his employer and undertook the trip to Fairbanks to have dinner with his family. There is no indication that, when he left Fairbanks on that last Sunday morning to work that day in

overtime status at Clear, it was with his understanding or that of anyone else that he would again return to Fairbanks that night. In fact the inference is to the contrary because the idea for the trip seems to have originated when the decedent called his wife at 3:30 o'clock in the afternoon to tell her that he was coming home to have Christmas dinner with the family.

Since there is no evidence in the record that the journey undertaken by Fred Liggett from Clear to Fairbanks on the evening of December 25 was a part of the service he was performing for his employer, the special errand exception to the going and coming rule is not applicable and therefore the trial court was not justified in sustaining the conclusions and decision of the Workmen's Compensation Board.

The superior court's order of October 2, 1963 affirming the decision and award of the Board is reversed and the case remanded with directions to vacate the Board's decision and award and to enter judgment for the appellants.

Reversed.

---

16. In Voehl v. Indemnity Ins. Co., 288 U.S. 162, 53 S.Ct. 380, 77 L.Ed. 676, 87 A.L.R. 245 (1933), the United States Supreme Court, in discussing the basis for extending coverage under the special errands exception to the going and coming rule, stated:
"Service in extra hours or on special errands has an element of distinction which the employer may recognize by agreeing that such service shall commence when the employee leaves his home on the duty assigned to him and shall continue until his return. An agreement to that effect may be either express or be shown by the course of business. In such case the hazards of the journey may properly be regarded as hazards of the service, and hence within the purview of the Compensation Act." 288 U.S. at 169–170, 53 S.Ct. 380, 383, 77 L.Ed. at 680.