**M–K RIVERS and Alaska Pacific Assurance Co., Appellants,**

v.

**Robert SCHLEIFMAN, Appellee.**

**No. 3598.**

Supreme Court of Alaska.

Aug. 31, 1979.

---

Charles P. Flynn of Burr, Pease & Kurtz, Anchorage, for Appellants.

Robert Schleifman, pro se.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

CONNOR, Justice.

Robert Schleifman was injured in a motorcycle accident while traveling from the Sourdough pipeline camp, admittedly a remote site, to the bank in the city of Glennallen, about 30 miles away, to cash his payroll check. The question on appeal is whether the injuries he sustained en route are compensable under the Alaska Workmen's Compensation Act.[1]

On Friday, July 16, 1976, Schleifman completed his workday and returned to camp with his work crew sometime before the regular quitting time of 4:30 p. m. He changed his clothes and left on his motorcycle for town, where the bank remained open late on Fridays, in order to cash his paycheck. Schleifman testified that he needed cash to use in traveling to Anchorage for his rest and relaxation leave, which was scheduled to begin the following Monday. After passing a car about two miles from camp, he was slowing down when he reached a corner which he was unable to negotiate. The motorcycle went off the road, resulting in serious injuries to Schleifman's legs.

---

1. AS 23.30.005–.270

The relevant provision in the determination of whether the injuries sustained in this case are compensable provides:

" '[I]njury' means accidental injury or death arising out of and in the course of employment . . .."
AS 23.30.265(13).

On these facts, the Alaska Workmen's Compensation Board denied and dismissed Schleifman's claim for temporary total disability payments. Because the board found that the employment here in no way created the risk which resulted in the injury, it concluded that the injury was not within the course and scope of employment and, therefore, was not compensable. On appeal, the superior court reversed the board, finding that Schleifman was entitled to compensation.

The standard of review that we employ with regard to decisions of the workmen's compensation board has been consistently reiterated:

"[W]hile we will not vacate findings of the Workmen's Compensation Board if supported by substantial evidence, our scope of review is not so limited where the Board's decision rests on erroneous legal foundations."

*Alaska State Housing Authority v. Sullivan*, 518 P.2d 759, 760 (Alaska 1974); *Hewing v. Alaska Workmen's Compensation Board*, 512 P.2d 896, 898 (Alaska 1973); *Ostrem v. Alaska Workmen's Compensation Board*, 511 P.2d 1061, 1063 (Alaska 1973). Since the facts of this case are undisputed, the question before us is whether the law was applied properly to these facts. In these circumstances, the adequacy of conclusions of law is given "fresh consideration on appeal." *W. R. Grasla Company v. Alaska Workmen's Compensation Board*, 517 P.2d 999, 1003 (Alaska 1974).

The board denied relief because it concluded that Schleifman's employment had in no way contributed to the risk of injury. In reversing the board, the superior court interpreted the law to provide compensation for all injuries sustained within the duration of employment at a remote site. Therefore, the issue raised by this appeal concerns the proper application of the remote site injury doctrine. In our previous cases we have held that where an injury is sustained or death results while engaging in or incident to reasonable recreational activities at a remote site, it is compensable.

*Anderson v. Employers Liability Assurance Corp.*, 498 P.2d 288 (Alaska 1972), involved an electrician-lineman employed at the remote site of Amchitka Island in the Aleutians. Food, lodging, a bar, and various recreational facilities were provided by the employer. While at the employer's bar, Anderson was induced by a wager with another employee to enter into a contest to determine which man could climb a transmission pole the most rapidly. Anderson fell and was injured during his attempt. We held that this was reasonable recreational activity under the circumstances and deemed his injuries covered by workmen's compensation. In explaining the remote site doctrine, we said:

An outgrowth of these rules is the doctrine which has emerged in cases concerning resident workers on overseas construction projects, at isolated locations and at work premises which are relatively remote from the normal amenities of civilization. In an impressive number of cases compensation has been awarded for injuries occurring while the employee was pursuing recreational activities, even at locations not immediately adjacent to the job site or the living quarters. *Although it is often possible for a resident employee in a civilized community to leave his work and residential premises to pursue an entirely personal whim and thereby remove himself from work-connected coverage, the worker at a remote area may not so easily leave his job site behind.* The isolation and the remote nature of his working environment is an all encompassing condition of his employment. The remote site worker is required as a condition of his employment to do all of his eating, sleeping and socializing on the work premises. *Activities normally totally divorced from his work routine then become a part of the working conditions to which he is subjected.*

*Id.* at 290 (footnotes omitted) (emphasis added).

Under our statute, the concept of work connection establishes coverage. The test is that "if the accidental injury or death is connected with any of the incidents

of one's employment, then the injury or death would both arise out of and be in the course of such employment". *Northern Corporation v. Saari,* 409 P.2d 845, 846 (Alaska 1966). In *Saari* the employer required employees to live at the remote work camp and had arranged for them to use the recreational facilities at a nearby military base. While returning from using the facilities, Saari fell off the road into a creekbed and fractured his skull. His accidental death was held to be an incident of his employment.

■ Although both *Anderson, supra,* and *Saari, supra,* involved injuries sustained in recreational pursuits, the remote site injury doctrine is not limited to such situations. Rather, it is a consistent application of the fundamental principles of the workmen's compensation system.[2] The underlying premise of this system is that liability is based upon the existence of an employment relationship, not upon a determination of culpability.[3] In return for the employee giving up his right to sue the employer in the event that the employer was at fault in causing the injury, the system provides the employee with moderate assured benefits to compensate for loss of earning capacity, not for bodily injury. Therefore, the basic inquiry is whether the injury was substantially caused by, or the result of, the employment relation.

Injuries sustained by a temporary employee traveling between a remote worksite and his home were held incident to his employment in *Department of Highways v. Johns,* 422 P.2d 855 (Alaska 1967). In finding that the travel was a hazard of the employment, we relied on the special errand rule:

"When an employee, having identifiable time and space limits on his employment, makes an off-premises journey which would normally not be covered under the usual going and coming rule, the journey may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself."

*Id.* at 860, *quoting* 1 A. Larson, *The Law of Workmen's Compensation* § 16.10 (1965).

■ In *Johns* we invoked the special errand rule because we found sufficient evidence to support an inference that the employee was to be compensated for his travel. However, the special errand rule will usually not be applicable in the absence of reimbursement, an express agreement, or some other clear indication that travel is an integral part of the employment relationship. Although in the instant case the special errand rule does not apply, the employer did derive a benefit from having the employee living at the remote site.[4] The exigencies of the remote site situation, discussed above, require that a continuing employment relationship be found during Schleifman's trip to town.

Sourdough camp was a remote site requiring workers to live in the immediate area where they were going to perform their jobs. This residency requirement presents a special situation where certain reasonable activities must be deemed inci-

2. The social philosophy underlying workmen's compensation legislation is discussed in *Searfus v. Northern Gas Company,* 472 P.2d 966, 969 (Alaska 1970).

3. 1 A. Larson, The Law of Workmen's Compensation § 2.10, at 5 (1978), *Fruit v. Schreiner,* 502 P.2d 133, 141 (Alaska 1972).

4. In *O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc.,* 380 U.S. 359, 362, 85 S.Ct. 1012, 1014–15, 13 L.Ed.2d 895, 898 (1965), the Court explained that federal law does not require "a causal relation between the nature of employment of the injured person and the accident", nor "is it necessary that the employee be engaged at the time of the injury in activity of benefit to the employer" to find an injury compensable. What is required is that "the obligations or conditions of employment create a 'zone of special danger' out of which the injury arose." The line is drawn only at those cases where an employee had become "so thoroughly disconnected from the service of his employer that it would be entirely unreasonable to say that injuries suffered by him arose out of and in the course of his employment."

dents of employment even though those same activities, if conducted at a non-remote site, might not be held to be work-related.[5] Driving from the Sourdough camp to Glennallen to cash one's paycheck is reasonably contemplated and foreseeable by the employment situation. A risk inherent in that activity is that injuries could be sustained en route. Moreover, the trip was connected with some benefit to the employer. The employer paid Schleifman by check, rather than by cash, which was a convenience to the employer. Given the remote site, and the impending leave on the following Monday, it was expectable the Schleifman might travel to Glennallen for the purpose of cashing the check. Such an errand can be viewed as serving the mutual benefit of both the employer and the employee.[6] Given this factor together with the remote situs of Schleifman's employment, it is our opinion that the trip was incident to Schleifman's employment. It follows that his injuries are compensable.

We affirm the decision of the superior court which reversed and remanded this case to the Alaska Workmen's Compensation Board.

AFFIRMED.

MATTHEWS, Justice, dissenting, with whom BURKE, Justice, joins.

There are here none of the employment related contacts which existed in our other remote site cases. Thus, in *Northern Corporation v. Saari*, 409 P.2d 845, 847 (Alaska 1966), "Saari was killed in the course of utilizing the recreational facilities at the air base which had been provided by Northern for the benefit and enjoyment of Saari and other employees." *Anderson v. Employers' Liability Corp.*, 498 P.2d 288 (Alaska 1972), involved an injury to an on-call employee on the premises supplied by the employer. *State Department of Highways v. Johns*, 422 P.2d 855 (Alaska 1967) involved an injury while the employee was traveling to work and was being compensated for the travel.

This case should be governed by *R.C.A. Service Co. v. Liggett*, 394 P.2d 675 (Alaska 1964) where we reversed an award for an employee who was killed while flying home from a remote job site for private purposes. The majority opinion makes an effort to distinguish the *RCA* situation from the current one by noting that here Schleifman's "leave" from the work site had not begun while implying that the employee's leave had begun in *RCA*. Actually there is no important difference between the two cases. Schleifman was off work for the day and was free to spend his time until the next day as he saw fit. He chose to go to Glennallen. Likewise the employee in *RCA* was through for the day and decided to fly to Fairbanks to spend the evening with his family. Like Schleifman, he was to report to work the next day.

The fact that Schleifman had intended to cash his pay check is of no relevance. The overwhelming majority of Alaskan employees receive pay checks and no doubt most of them travel to a bank or other business to cash them. To conclude that an injury suffered on such a trip is compensable stretches the course of employment stan-

---

5. *See generally* Larson, The Positional Risk Doctrine in Workmen's Compensation, 1973 Duke L.J. 761. This position is in accord with the view recently expressed in *Ahart v. Preload Co.*, 57 A.D.2d 976, 394 N.Y.S.2d 104 (1977), where the New York court said:

"It is well settled that an employee who is required to work far from home and who must remain in a particular locality for a period of time, may indulge in any reasonable activity and if he does so, the risks inherent in such activity are an incident of the employment." (citations omitted)

*Ahart, supra*, 394 N.Y.S.2d at 105.

6. This is what distinguishes this case from *R.C.A. Service Company v. Liggett*, 394 P.2d 675 (Alaska 1964). There compensation was denied to an employee who was killed while returning to his family home after completing work at the job site, where he normally lived. In the case at bar Schleifman's leave from the work site had not commenced. The accident occurred on a Friday, and his leave was to begin on the following Monday. *See Dependents of Pacheco v. Orchids of Hawaii*, 54 Haw. 66, 502 P.2d 1399 (1972); *Watson v. American Can Company*, 23 A.D.2d 423, 261 N.Y.S.2d 306 (1965). We do not base compensability in the case at bar solely on this consideration.

dard beyond the breaking point. And there is nothing in the record indicating that Schleifman's trip on the public highway between Sourdough and Glennallen involved unique danger.

The two check cashing cases cited by the majority opinion do not support the proposition that an injury suffered while one is traveling to cash one's pay check arises out of and in the course of employment. The injury in the first case, *Dependents of Pacheco v. Orchids of Hawaii*, 54 Haw. 66, 502 P.2d 1399 (1972), occurred during a coffee break and thus falls within the so-called "coffee break exception" to the going and coming rule which ordinarily denies compensation for trips to and from work. *See* 1A Larson, Workmen's Compensation, § 15.-54 (1978). In the second case, *Watson v. American Can Company*, 23 A.D.2d 423, 261 N.Y.S.2d 306 (1965), the accident occurred during a lunch break and there were special circumstances not present here. Larson says the following of *Watson* and another similar New York case:

> While the result in the two New York cases is defensible on the special facts of those cases, it is obvious that they cannot be taken to support a general rule that journeys to cash pay checks are in the course of employment. Any such extrapolation would quickly get out of hand, since trips might be taken at any hour of the day or night to almost any place where claimant happened to be able to cash checks.

*Larson, supra,*. § 26.30, page 5–247.

For these reasons I would reverse the decision of the Superior Court and remand with instructions to reinstate the Board's decision.