**ROGERS ELECTRIC COMPANY and Industrial Indemnity Co., Appellants,**

v.

**Richard Lee KOUBA, Appellee.**

**No. 4164.**

Supreme Court of Alaska.

Dec. 14, 1979.

Sanford M. Gibbs, Hagans, Smith, Brown, Erwin & Gibbs, Anchorage, for appellants.

Pamela L. Finley and Paul M. Hoffman, Robertson, Monagle, Eastaugh & Bradley, Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

RABINOWITZ, Chief Justice.

Richard Kouba, an electrician, was injured at Prudhoe Bay in September 1975 when he slipped on a patch of ice and a cable he was installing fell across his chest. Being unable to work further on the North Slope, he returned to Texas. Dr. Arthur Glassman, an orthopedic surgeon in Houston, examined Kouba there and concluded that he had sprained ligaments in his lumbar spinal area. Dr. Glassman found at that time no objective signs of injury, but testified that sprains like Kouba's often result in weakened and scarred ligaments. After several visits by Kouba, Dr. Glassman decided on November 24 that Kouba's lumbar sprain had subsided so that he could return to work. Kouba received workers' compensation benefits between the date of the injury and November 24 from Rogers Electric Company ("Rogers"), his Alaska employer.

Kouba has worked intermittently since then but his often complained of lower back pains which he claims have limited his capabilities.[1] He quit some of his jobs, and was laid off from others; he felt many of his layoffs resulted from his physical inability to do the work required of him, rather than lack of need for his services. Kouba has frequently been to Dr. Glassman for diagnosis and treatment; he believes that the treatment, both medication and physical therapy, eased his back pains, but that returning to work always reaggravated them. Dr. Glassman testified that in his opinion the subjective symptoms of pain and the objective signs, including later development of some muscle spasms during his course of treatment, were related to the Prudhoe Bay accident.

Kouba was examined once in March 1976 by Dr. Richard DeYoung, another Houston orthopedic surgeon, at the request of Roger's workers' compensation insurance carrier. Dr. DeYoung believed that Kouba's

---

1. Prior to the Alaska accident, Kouba claims he had never had back problems.

back problems were the result of spondylolysis,[2] a congenital defect in the bony bridge between vertebrae that causes the bone to fatigue, and that this condition could have been aggravated by the accident. He testified that he found nothing objective in his examination that would have prevented Kouba from working at that time as an electrician.

Kouba's claim for benefits after November 24, 1975[3] was contested by Rogers' carrier on the grounds that Kouba's subsequent physical problems were not the result of the Prudhoe Bay accident, and that he has not missed employment opportunities because of his disabilities. The claim was submitted to the Alaska Workmen's Compensation Board ("Board") with the depositions of Kouba and the two surgeons as evidence. After a hearing, the Board on August 2, 1977 ruled against Kouba. He appealed. The superior court reversed the Board's decision on June 19, 1978, holding that it was not supported by substantial evidence, and remanded the case to the Board for a redetermination of the length of Kouba's temporary disability. Rogers and its insurance carrier have in turn appealed the court's ruling. They contend that the superior court utilized an improper standard of review in that it reweighed the evidence and drew its own inferences from the evidence instead of simply assessing the evidence to see whether it was sufficient to support the Board's finding.

We note first that this case falls within the scope of the statutory presumption of workers' compensation coverage, AS 23.30.120(1).[4] In *Employers Commercial Union Co. v. Libor*, 536 P.2d 129, 132 (Alaska 1975), we held that the presumption governed the issue of whether Libor's herniated disc was the belated result of a clearly work-related injury he had suffered. It was therefore necessary for Rogers to show by substantial evidence that Kouba's continuing back problems did not result from the Prudhoe Bay accident. We agree with the superior court that Rogers did not make the necessary showing.[5]

"Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Miller v. ITT Arctic Services*, 577 P.2d 1044, 1046 (Alaska 1978). The Board rested its conclusion on the lack of "objective" signs of injury[6] and its view that "it is unusual for disability without objective signs to last for over a year." No evidence or medical authority was set forth in support of this last statement, and the Board does not state what objective signs it expected periodically strained ligaments to present. The Board's finding directly contradicted the opinion of Dr. Glassman, who had treated Kouba for almost two years by the second deposition date, that Kouba's back problems probably did result from his Alaska injury. Dr. DeYoung's testimony, based only on one examination of Kouba, also did not support the Board's conclusion since he believed that Kouba's pain was real but caused by a congenital condition and that this condition could have been aggravated by the injury. He went on to state that there was no

2. Dr. Glassman also diagnosed the spondylolysis but found it too minimal to be a possible cause of Kouba's problems.

3. He has claimed temporary total disability for those periods since that date that he has not worked, continuing until he is no longer temporarily disabled or is rated for permanent partial disability, and also seeks payment for medical expenses incurred.

4. AS 23.30.120(1) reads:
   *Presumptions.* In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed in the absence of substantial evidence to the contrary that

   (1) the claim comes within the provisions of this chapter . . ..

5. The Board also found that neck pains experienced by Kouba in 1976 were not related to the accident. The superior court affirmed that finding, and Kouba has not appealed it.

6. The parties disagreed as to whether a muscle spasm observed by Dr. Glassman near, but above, the location of Kouba's sprain was an objective sign of the injury. We believe that the spasm's occurrence at a different point from the sprain could form a reasonable basis for the Board to conclude that it was not connected to the injury.

objective evidence of this condition six months later but that it was his opinion that it would be unlikely that there would be any lingering evidence. Thus, Dr. De-Young's testimony was not unequivocal on whether Kouba's pain was work-related or not. At best, it was ambiguous. This court has often stated "any doubt as to the substance of medical testimony should be resolved in favor of the claimant."[7] We must conclude, therefore, considering the doctors' depositions in their entirety,[8] that the Board's decision was not supported by the "substantial evidence" necessary to rebut the statutory presumption of coverage.[9]

*Miller v. ITT Arctic Services,* 577 P.2d 1044 (Alaska 1978) is distinguishable from the case at bar. In *Miller,* the Board was confronted with conflicting medical testimony as to whether the claimant's death was work-related; the Board chose to accept the opinion of the doctor who said it definitely was not. We affirmed, holding that the Board in selecting between conflicting testimony was acting within the scope of its fact-finding powers. *Id.* at 1049. Here, by contrast, there was no clear-cut testimony at all indicating lack of causation. The treating doctor's opinion was that the lower back pain was work related and the consulting doctor's opinion that it could have been.

The Board also concluded that after he was released to work in November, Kouba worked when work was available, and his opportunities were limited by the intermittent construction industry job market. It based this conclusion on Kouba's testimony that jobs were hard to come by in Texas, that he was always laid off rather than fired for lack of productivity,[10] and that he received unemployment compensation on at least two occasions, indicating his ability to work at those times. Such evidence does establish that some of Kouba's periods of unemployment were due to causes other than his disability. But it cannot reasonably support the Board's conclusion that *all* the unemployment was due to other factors. As Kouba argues on appeal, he did not claim that he was totally unable to find work but that he was prevented from working to his full capacity. The superior court noted in this regard:

> [T]here were no Texas employment statistics before the Board, only [Kouba's] uncontradicted testimony. [He] stated that he worked when his back hurt only because of the need for money, and that there had often been jobs available which he elected not to try to take because of the pain he was suffering.

Other uncontroverted evidence was a March 1977 letter from Dr. Glassman to Rogers' carrier, in which the doctor set forth periods of time in which Kouba could not work due to back and neck pains.

We find, then, that by operation of the statutory presumption, Kouba's back pains resulted from the cable accident at Prudhoe Bay, and that Rogers is liable for Kouba's medical expenses and loss of earning capacity that resulted. On remand, the Board will have to determine which medical expenses resulted from the back injury and which arose from other factors, and to what extent the back injury impaired Kouba's earning capacity.

The judgment of the superior court is AFFIRMED.

7. *Miller v. ITT Arctic Services,* 577 P.2d 1044, 1045 (Alaska 1978) and cases cited therein.

8. Neither doctor doubted the existence or effect of the pains Kouba claimed to be experiencing.

9. Even if the Board accepted Dr. DeYoung's diagnosis of spondylolysis as the cause of the problem, his opinion that the accident might have aggravated the condition would preclude an affirmance of the Board's decision. We do not find it reasonable, as Rogers suggests, to couple Dr. DeYoung's diagnosis with Dr. Glassman's view that the accident did not aggravate the spondylolysis. Dr. Glassman's opinion was premised on his belief, at odds with Dr. DeYoung's, that the spondylolysis was insignificant.

10. Kouba claimed that the alleged layoffs were often firings, as he was frequently discharged before a project was close to completion.