Joseph JOHNSON, Appellant,

v.

FAIRBANKS CLINIC and Alaska Pacific Assurance Company, Appellees.

No. 5927.

Supreme Court of Alaska.

July 9, 1982.

Lance C. Parrish and James A. Parrish, Parrish Law Office, Anchorage, for appellant.

Ronald Noel and Ralph Beistline, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellees.

Before BURKE, C. J., and RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

The single issue for determination in this appeal is whether the superior court erred in affirming the Workers' Compensation Board's (Board) denial of compensation to appellant Dr. Joseph Johnson for injuries he sustained in an automobile collision that occurred while he was driving to the Fairbanks Memorial Hospital to see a patient. For the reasons set forth below, we conclude that Dr. Johnson incurred injuries while undertaking a "special errand," and that, as a consequence, he is entitled to compensation for the injuries he sustained.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts are not in dispute. Dr. Johnson is a medical physician, specializing in surgery. He has been affiliated with the Fairbanks Clinic since 1963 and is a stockholder employee of it. His primary residence is in Fairbanks and he also owns a vacation home in Birch Lake, approximately sixty miles from Fairbanks. He maintains an office at the Fairbanks Clinic where his normal office hours are from 9:00 a. m. to 2:00 p. m., other than when he is performing surgery at the hospital. He works a flex-week, which means that one week he works Monday through Saturday and the next week he works Monday through Thursday.

The automobile collision that caused the injuries for which he seeks compensation occurred on a Sunday morning during one of Dr. Johnson's long weekends. He had decided to spend the weekend at his vacation home in Birch Lake.

On the Thursday preceeding the long weekend, Dr. Johnson examined a woman referred to him by the Breast Cancer Detection Center in Fairbanks. Dr. Johnson determined that it was necessary for the patient to undergo surgery as soon as possible. He therefore scheduled surgery on the following Monday, the first available day. Prior to Monday the patient was to be completely evaluated by her physician, Dr. Hanley, who was to determine whether she was physically capable of undergoing major surgery. Dr. Hanley was to call Dr. Johnson at Birch Lake if he determined that the patient could not undergo the surgery.

Dr. Johnson testified that it is his practice to have a discussion with his patients the day before surgery and that such a discussion was essential in this case because the surgery would involve a removal of part of the body. Dr. Johnson did not hear from Dr. Hanley and therefore he left Birch Lake at approximately 10:00 a. m. on December 9, 1979, to drive to the hospital in Fairbanks. He planned to return to Birch Lake after the consultation. Approximately thirty-five miles from the hospital, Dr. Johnson's vehicle went out of control on an icy highway and collided head-on with a dump truck. Dr. Johnson filed a Notice of Injury on December 19, 1979, and the carrier controverted the claim on January 10, 1980.

The Board concluded that Dr. Johnson's travel from Birch Lake to the hospital was not sufficiently work related to allow compensation and that the journey was not an inherent part of the service he was to perform. It concluded that the service Dr. Johnson was to perform was not out of the ordinary or unusual for his profession and that the distance or day of the week that Dr. Johnson had to travel to render this service did not create a sufficient nexus between his employment and the injury. The Board therefore denied Dr. Johnson's claim. That decision was affirmed by the superior court. This appeal followed.

## II. THE SPECIAL ERRAND RULE

In order to be compensable under the workers' compensation laws of this state, an employee's injury must arise "out of and in the course of employment." AS 23.30.-265(13). We held in *R.C.A. Service Co. v. Liggett*, that generally "injuries occurring off the employer's premises while the employee is going to or coming from work do not arise in the course of his employment." 394 P.2d 675, 677–78 (Alaska 1964) (footnote deleted); *accord Northern Corporation v. Saari*, 409 P.2d 845, 846 (Alaska 1966).

As we indicated in *Liggett*, however, there are several exceptions to the "going and coming" rule, one of which is the "special errand" rule. Professor Larson states this exception in the following fashion:

When an employee, having identifiable time and space limits on his employment, makes an off-premises journey which would normally not be covered under the usual coming and going rule, the journey may be brought within the course of em-

ployment by the fact that the trouble and time of making the journey, or the special inconvenience, hazzard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself.

1 A. Larson, The Law of Workmen's Compensation § 16.10, at 4–123 (1978) (footnotes deleted).[1]

■ To ascertain whether injuries sustained on a journey to work are compensable by application of the special errand exception, the dispositive question is "whether the journey was itself a substantial part of the service for which the claimant was employed and compensated." 1 A. Larson, *supra* § 16.11, at 4–136. Larson identifies three relevant considerations: (1) the relative regularity or unusualness of the journey; (2) the relative onerousness of the journey as compared to the service to be performed at the end of the journey; and (3) the suddenness of the work.

We have discussed the special errand rule on several prior occasions.[2] In *R. C. A. Service Co. v. Liggett*, 394 P.2d 675 (Alaska 1964), a supervisorial employee was killed while flying home from a remote site after working during what was ordinarily his day off. He had been required to work that day by his employer and the trip he made was the same one he normally made to and from work. We reversed a finding of compensability because there was no substantial evidence that the trip was work related. We observed that the decision to fly home was evidently reached after the deceased's arrival at the site; previously he had

---

1. Professor Larson expressly limits application of the special errand discussion to employees having reasonably definite time and place boundaries on their employment. 1 A. Larson, *supra* § 16.00, at 4–117. We recognize that physicians may oftentimes have professional obligations which cannot be restricted to fixed hours of employment. Here, however, the only evidence before the Board was that Dr. Johnson ordinarily worked within reasonably definite hours of employment. Furthermore, it is apparent that Dr. Johnson's trip to the hospital was necessitated by his professional obligations to his patient, not from his status as a

physician on call for emergency surgical matters.

2. We also discussed the special errand rule in *M–K Rivers v. Schleifman*, 599 P.2d 132 (Alaska 1979). At issue in *Schleifman* was whether injuries sustained while riding from a remote work site to cash a paycheck were compensable. The court rejected the argument that an award of compensation would have been justified under the special errand rule taken alone and instead adopted another theory mandating compensation.

planned to stay over and go to work the next day at the regular time. Thus, the trip was purely personal and could not be considered a special errand for his employer.

In *State v. Johns*, 422 P.2d 855 (Alaska 1967), an employee was temporarily reassigned to work for one week at a remote site where additional help was needed. We affirmed an award of compensation for injuries sustained by the employee when driving home because the urgency of the employee's assignment and the trouble, time and special inconvenience of the trip brought it under the special errand rule.

The present case raises a difficult question concerning the scope of the special errand exception. Is the special errand exception applicable where an employer requests that an employee travel to work on a nonwork day over a riskier than normal route in order to render services typical of those performed during normal work hours?[3] We believe that the facts presented in this case establish that Dr. Johnson's travel to the hospital was a special errand and that the injuries he incurred during that travel are compensable under the Workers' Compensation Act. To repeat the standard set forth by Professor Larson, "the journey may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself." 1 A. Larson, *supra* § 16.10, at 4–123. The foremost consideration in support of our conclusion that the trip was part of a special errand is the strong inference that

Dr. Johnson undertook the trip only at the implied request of his employer. Dr. Johnson testified that he was rarely called to perform work during a long weekend. Indeed, it is uncontroverted that Dr. Johnson was travelling to the hospital on a Sunday when he normally would not be working and that the trip was a special inconvenience to him. In Dr. Johnson's professional judgment it was necessary for him to visit the patient that day so that the surgery could be performed on Monday. While the need for Dr. Johnson's services may not have constituted a medical emergency, there is no basis in the record to question Dr. Johnson's judgment that it was necessary for him to make a special trip to the hospital in order to consult with the patient. We are also persuaded by the fact that the sixty mile trip from Dr. Johnson's vacation home at Birch Lake to the hospital under winter driving conditions entailed greater risks than Dr. Johnson ordinarily encountered on his daily commute from his Fairbanks home to either the clinic or the hospital. In short, the circumstances of the trip lead to our conclusion that the trip was an integral part of the services rendered in the course of a special errand necessitated by Dr. Johnson's employment.

Under analogous circumstances, in *In re Papanastassiou's Case*, 362 Mass. 91, 284 N.E.2d 598 (1972), an employee's death caused by an automobile collision that occurred during his drive home from the office was held compensable under the workers' compensation laws of Massachusetts. The court stated:

> Upon the facts presented here, we believe a finding was warranted that the decedent's employment "impelled" him to

3. Upon our review of the many cases cited by the parties and by Professor Larson in the treatise discussion, we have discovered no case which involved a squarely comparable factual setting. Several courts, though, invoked the special errand exception where the trip to perform normal services on an overtime basis apparently did not involve a journey riskier than the employee's normal commute. *See Jonas v. Lillyblad*, 272 Minn. 299, 137 N.W.2d 370 (1965); *Bengston v. Greening*, 230 Minn. 139, 41 N.W.2d 185 (1950); *Briggs v. American Bil-* trite, 74 N.J. 185, 376 A.2d 1231 (1977). *But see Foster v. Brown Transp. Corp.*, 143 Ga.App. 371, 238 S.E.2d 738 (1977); *cf. Lohnes v. Young*, 175 Ohio St. 291, 194 N.E.2d 428 (1963) (compensation denied for "regular extra" trip). Professor Larson notes, in this regard, that "[i]f the overtime work involves a special and extraordinary trip for the benefit of the employer, it has ... been held that the trip becomes part of the service." 1 A. Larson, *supra* § 16.12, at 4–144.

make the trip which ultimately led to his death. The decedent was a research chemist and was employed to conduct experiments and, as an incident thereto, he was required to do whatever he judged necessary to assure the success of his experiments. Although a salaried employee, in carrying out his duties, he was free to come and go as he pleased, and he had his employer's authorization to conduct work outside of the standard working hours. *On the day of the accident the decedent had not completed a particular experiment within the standard working hours, and in the exercise of his professional judgment, in order to achieve a successful result, he decided to return to complete the experiment after hours in the evening rather than wait for the start of the next working day.* Since the trip to the laboratory was in fulfillment of the decedent's obligations to his employer and otherwise in accordance with the terms of his employment, it follows that he was on an "undertaking" of his employer. *The instant case is thus clearly distinguishable from cases . . . where the employees were merely going to or coming from the places of business of their employers.*

284 N.E.2d at 600–01 (emphasis added).

■ The Board in this case indicated that the services that were to be provided by Dr. Johnson at the hospital were ordinary and usual for his profession. This finding is irrelevant, however. Dr. Johnson's trip to the hospital is within the ambit of the special errand rule not because of the nature of the services to be performed at the conclusion of the journey, but because of the nature and circumstances of the journey itself. In the exercise of his professional judgment, Dr. Johnson determined that it was necessary for him to take the time and trouble to make an inconvenient trip to the hospital in order to consult with a patient who was scheduled to undergo surgery the next day. This trip was undertaken on a day on which Dr. Johnson ordinarily would not work. Moreover, the trip itself entailed greater risks than Dr. Johnson's ordinary commute to work. Under these facts, we

believe Dr. Johnson's trip was a special errand and that he is accordingly entitled to compensation under the Workers' Compensation Act for the injuries he sustained while driving to the hospital.

REVERSED and REMANDED to the superior court for remand to the Workers' Compensation Board for further proceeding consistent with this opinion.