### KODIAK OILFIELD HAULERS, Petitioner,

v.

### Robert L. ADAMS, Protective National Insurance Company, and Alaska Workers' Compensation Board, Respondents.

### No. S–2432.

Supreme Court of Alaska.

July 21, 1989.

---

Julie E. Bryant and Robert J. McLaughlin, Faulkner, Banfield, Doogan and Holmes, Anchorage, for petitioner.

Thomas L. Melaney, Anchorage, for respondent, Robert L. Adams.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

This worker's compensation case presents two issues: First, whether an employee's injury sustained in an automobile accident returning home from medical treatment of an employment-related injury is compensable under the Workers' Compensation Act and second, whether the Board erred by not applying the presumption of compensability.

### I. FACTS

Robert L. Adams (Adams) was employed by Kodiak Oilfield Haulers (Kodiak) as a short-haul truck driver on the North Slope. In February 1980, he injured his shoulder and back when he fell while attempting to load trash into a large basket. He returned to work after several months and subsequently injured his back in December 1982. He returned to Anchorage for medical treatment. In Anchorage, Dr. von Wichman diagnosed Adams as having a degenerative L5–S1 disc.

In September 1983, Adams was sent to Dr. Morris Horning for an independent medical evaluation. From that point on, Dr. Horning became Adams' treating physician. Dr. Horning also diagnosed a degenerative disc at the L5–S1 level. He suggested a job change and noted that Adams was a candidate for surgery.

Adams was anxious to return to work in early 1984 because he was interested in earning enough hours to vest in the Teamsters Pension Fund and because he believed he had been out of work too long. Adams therefore requested that Dr. Horning give him a work release. Dr. Horning released Adams, who returned to work in May 1984.

While working over the next year and a half, Adams saw Dr. Horning three times. Adams still reported significant back pain but was able to perform his job.

In December 1985, Adams slipped from the top step of his truck, and fell some three and a half feet, landing on his bottom. He suffered a stab of pain in his back and returned to Dr. Horning for treatment in Anchorage. Dr. Horning put Adams on an exercise reconditioning program. He projected that if Adams recovered quickly, he would be able to return to work in six weeks or so.

On January 29, 1986, Adams drove from Wasilla to see Dr. Horning concerning his back injuries and pain. After the doctor's appointment, Adams stayed in Anchorage with a friend in order to work in a program assisting persons with chemical dependency problems. On February 3, 1986, Adams was injured on his way home to Wasilla when he was rear-ended while stopped at an intersection.

The accident slightly aggravated Adams' low back condition and produced a soft tissue injury to his neck. The neck injury was a new injury which had not been present after the work-related injuries. Adams continued to receive treatment from Dr. Horning for both injuries. As of early April 1986, Dr. Horning stated that the back pain had returned to its pre-automobile accident level, and that the neck pain was a main factor in Adams' disability.

## II. PROCEEDINGS

After the 1982 and 1985 back injuries, Adams was paid worker's compensation benefits. For the December 1985 injury,

benefits were paid through March 25, 1986. Benefits were terminated on that date because Dr. Horning reported that Adams could have returned to work had it not been for his automobile accident.

Adams' attorney submitted an Application for Adjustment of Claim to the Alaska Workers' Compensation Board seeking reinstatement of temporary total disability benefits. On August 8, 1986, the Board held a hearing on Adams' claims. The issues presented to the Board by the parties were 1) whether Adams' work-related injuries in December 1982 and December 1985 rendered him disabled after March 25, 1986, and 2) if Adams were disabled, was the disability attributable to either the December 1982 or the December 1984 incident.[1]

After the hearing, the Board raised the issue of whether the Workers' Compensation Act provided coverage for the injuries Adams suffered in the February 1986 automobile accident. Pursuant to the board's order, the parties prepared additional evidence and presented written memoranda on the automobile accident issue. The Board issued an interlocutory order stating that Adams was not entitled to medical or disability benefits as a result of the automobile accident. The Board found that the five days Adams remained in Anchorage after his doctor's appointment served to break whatever work-connection the trip otherwise had.

On November 4, 1986, the Board ruled that Adams was not disabled by his work-related injuries as of the end of March 1986 and therefore denied his claim for temporary total disability compensation. Adams appealed the board's decision to the superior court. The superior court, Judge William H. Fuld presiding, reversed finding that Dr. Horning's testimony was ambiguous as to whether Adams could return to work and that the Board erred in not applying the presumption of compensability to Adams' disability. The superior court also

---

1. Although Adams worked for the same employer at the time of the two injuries, it was necessary to determine which incident was respon-

sible for Adams' problems because of changes in Kodiak's insurance coverage.

concluded that the Board erred in determining that a five-day delay in returning from the medical treatment trip to Anchorage was enough to preclude coverage for the accident. Judge Fuld remanded the case to the Board for consideration of whether the presumption of compensability should be applied and whether Adams' delay in returning from his medical treatment increased the risks involved in the trip.

Kodiak appealed.[2] For the reasons set forth below, we reverse the judgment of the superior court and affirm the board's decision.

## III. DISCUSSION

### A. Did the Board Err in Concluding that Adams' Automobile Accident Was Not Compensable?

1) Standard of Review

■ Kodiak argues that the board's decision to limit coverage for trips made in order to receive treatment of work-related injuries is a matter within the expertise of the Board. As a result, Kodiak argues that the board's decision to limit the coverage of the trip should be reviewed under the reasonable basis standard rather than the substitution of judgment standard for questions of law.

In *Phillips v. Houston Contracting, Inc.*, 732 P.2d 544, 546 (Alaska 1987), we stated that when an issue is a question of statutory interpretation and does not involve the board's special expertise, we are free to substitute our independent judgment and interpret the issue in accordance with our view of the purposes of the statute. In *M-K Rivers v. Schleifman*, 599 P.2d 132 (Alaska 1979), the court was confronted with a question analytically similar to the one presented in this case—whether an accident was within the scope of employment under the remote site doctrine. The court viewed the question as one of statutory interpretation and applied the substitution of judgment standard. *M-K Rivers*, 599 P.2d at 134. Similarly, the question of whether medical travel for treatment of work-related injuries is covered under the Workers' Compensation Act and the scope of that coverage is a question of statutory interpretation. We therefore apply the substitution of judgment standard.

2) Is Travel for the Purpose of Treatment of Work-Related Injuries Covered by the Workers' Compensation Act?

■ The Board held that accidental injuries sustained during a trip to or from a doctor's office for treatment of a work-related injury was compensable under the Alaska Workers' Compensation Act ("the Act"). The Board cited Professor Larson's treatise for the proposition that "the better view appears to be that accidental injuries during [such] a trip are work connected." 1 A. Larson, *Law of Workmen's Compensation* § 13.13, at 3–406 (1986).

Kodiak argues that such a result is contrary to AS 23.30.265 which limits compensable injuries to those "arising out of and in the course of employment." AS 23.30.265(2) states:

"arising out of and in the course of employment" includes employer-required or supplied travel to and from a remote site; activities performed at the direction or under the control of the employer; and employer-sanctioned activities at employer-provided facilities; but excludes activities of a personal nature away from employer-provided facilities.

Contrary to Kodiak's assertion, this provision does not limit coverage of Adams' accident. First, since the doctor's appointment was the result of a work-related injury, the activity cannot be considered "of a personal nature." Under the Act, an employee must submit to reasonable medical treatment as a condition of receiving compensation.[3] Consequently, such medical

---

**2.** We issued an order on July 28, 1988, directing the parties to show cause why the appeal should not be dismissed on the grounds that the order being appealed was not final for purposes of appeal under *City and Borough of Juneau v. Thibodeau*, 595 P.2d 626 (Alaska 1979). By an order dated October 26, 1988, we decided to treat this appeal as a petition for review and granted the petition.

**3.** AS 23.30.095(d).

treatment is an "activit[y] performed at the direction of the employer."

Second, the fact that an employee's usual travel to and from work is not covered under the "going and coming rule"[4] does not dictate noncoverage for medical travel. As a policy matter, travel related to work-connected medical treatment is more analogous to a "special errand"[5] which is covered under the Act.

In conclusion, we affirm the board's holding that medical travel for treatment of work-related injuries is covered under the Alaska Workers' Compensation Act.

3) Did the Board Apply a Correct "Deviation Exception" to Coverage under the Act for Travel in Order to Receive Medical Treatment of Work-related Injuries?

■ The Board found that Adams' trip to Anchorage was a "dual purpose" trip under *Anchorage Roofing Co., Inc. v. Gonzales,* 507 P.2d 501, 504 (Alaska 1973). The Board found that the trip was not personal under the analysis of *Anchorage Roofing,* and therefore concluded that it would ordinarily be compensable. However, the board concluded that the five-day delay represented a non-compensable deviation from an otherwise compensable trip. In reaching this conclusion the board reasoned:

> that the allowable passage of time between the medical treatment and the return trip [can]not be completely left open-ended. This concern is arguably more critical in medical treatment cases since, unlike business travel, medical treatment travel is ordinarily done without the knowledge of the employer. Our Act permits the employee to choose the medical care provider and the time of treatment. The Board believes some restriction on the time within which the trip must be completed if the trip is to be covered is therefore necessary to limit the employers risk.
>
> The cases cited by Professor Larson generally involve delays of hours rather

than days. However, the Board believes that Alaska's uniqueness must be recognized by a more liberal standard. The Board believes that a serviceable standard must not be tied to a particular number of hours, or even days, due to differences in distances, weather, and available transportation. The Board believes, therefore, that a dual-purpose medical treatment return trip must be undertaken "as soon as reasonably possible" in order to be covered.

The superior court reversed, contending that the board misapplied *Anchorage Roofing* by not considering whether the delay increased the risk of an accident. We disagree and affirm the judgment of the board.

In *Anchorage Roofing,* the court set out a multi-part balancing test to determine whether a personal deviation from a covered business trip renders it noncompensable. As the court noted:

> there is the need ... to balance a variety of factors such as the geographic and durational magnitude of the deviation in relation to the overall trip, past authorization or toleration of similar deviations, the general latitude afforded the employee in carrying out his job, and any risks created by the deviation which are causally related to the accident.

507 P.2d at 507 (footnote omitted). We do not believe that the board misapplied the *Anchorage Roofing* test in this case. Considering the record as a whole, it is clear that Adams' five-day delay in Anchorage did not increase the risks involved in his homeward trip. However, at some point the length of an employee's delay in returning home does function to destroy the trip's work connection regardless of whether it increases or lessens the risk of the return journey. As Professor Larson notes, "An employee who has the right to have his homeward journey covered cannot, so to speak, put the right in the bank indefinitely and cash it at whatever future time suits his convenience." 1 A. Larson,

4. *State, Dep't of Highways v. Johns,* 422 P.2d 855 (Alaska 1967); *R.C.A. Serv. Co. v. Liggett,* 394 P.2d 675 (Alaska 1964).

5. *R.C.A. Serv. Co.,* 394 P.2d at 678.

*The Law of Workmen's Compensation* § 19.29, at 4–362, 4–370 (1985). We believe that the Board was correct in determining that Adams' five-day delay in returning home ended the compensability of his return trip.

### B. *Did the Board Err in Concluding that Adams' Work–Related Disability Ended in Late March 1986?*

#### 1) Did the Board Err by Failing to Apply the Presumption of Compensability?

■ The superior court held that the Board failed to "discuss the statutory presumption and the burden of the employer producing substantial evidence that the prior on the job accidents were [not] the cause of the employee's inability to return to work." The superior court therefore remanded the issue of the medical causation of the employee's current disability back to the Board.

Kodiak argues that the statutory presumption in AS 23.30.120 applies only to work-relatedness. Adams contends that the presumption by its plain terms extends beyond work-relatedness and was applied to medical causation in *Rogers Electric Co. v. Kouba,* 603 P.2d 909 (Alaska 1979).

Alaska Statute 23.30.120(1) provides for a statutory presumption of workers' compensation coverage:

Presumptions: In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed in the absence of substantial evidence to the contrary, that

(1) the claim comes within this chapter.

In *Kouba,* the employer contended that the employee's back disability was the result of an independent congenital condition and not the result of the work accident. The court stated:

We note first that this case falls within the scope of the statutory presumption of workers' compensation coverage, A.S. 23.30.120(1). ... It was therefore necessary for Rogers to show by substantial evidence that Kouba's continuing back problems did not result from the Prudhoe Bay accidents. We agree with the

Superior Court that Rogers did not make the necessary showing.

*Kouba,* 603 P.2d at 911 (footnote omitted). Consequently, as to a presently disabling condition, the court noted that the presumption applied so as to require the employer to present substantial evidence that the present back disability was not the result of the work injury. We similarly conclude that the presumption applies here, requiring the employer to introduce substantial evidence that the work-related back injury was not the source of Adams' disability.

#### 2) Was Failure to Apply the Presumption Harmless Error?

■ Kodiak argues that any failure to apply the presumption was harmless error since the employer presented sufficient substantial evidence to overcome the presumption. We agree and therefore affirm the board's decision.

The presumption of compensability places the burden of producing evidence on the employer. Once substantial evidence contrary to the presumption is introduced, the presumption drops out and the burden of proving all elements of the claim falls on the claimant. *Bailey v. Litwin Corp.,* 713 P.2d 249, 252 (Alaska 1986); *Veco, Inc. v. Wolfer,* 693 P.2d 865, 870 (Alaska 1985). As we noted in *Veco:*

Since the presumption shifts only the burden of production and not the burden of persuasion, the evidence tending to rebut the presumption should be examined by itself. The court does not weigh the evidence tending to establish causation against the rebuttal evidence in deciding whether the employer has produced substantial evidence to rebut the presumption of compensability.

693 P.2d at 869–70 (footnote omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Miller v. ITT Arctic Services,* 577 P.2d 1044, 1046 (Alaska 1978).

In reviewing the evidence relied on by the Board in denying Adams' claim, we conclude that Kodiak presented sufficient evidence to rebut the statutory presump-

tion. In concluding that the neck injuries were the source of his present disability, the Board relied on Dr. Horning's statements that Adams' back condition had returned to its pre-aggravation condition. Without discussing the presumption, the Board found that Adams had failed to meet his ultimate burden of persuasion. While failure to apply the presumption was error, we conclude that it was harmless error since Kodiak presented sufficient evidence to rebut the presumption.

■ We next consider whether the board's determination that Adams was no longer disabled was supported by substantial evidence when reviewing the record as a whole. *Delaney v. Alaska Airlines*, 693 P.2d 859, 863 (Alaska 1985). In reviewing the board's determination, our task "is not to reweigh the evidence presented to the Board, but to determine whether there is substantial evidence in light of the whole record that a reasonable mind might accept as adequate to support the Board's conclusion." *Fairbanks North Star Borough v. Rogers & Babler*, 747 P.2d 528, 533 (Alaska 1987); *Delaney*, 693 P.2d at 863. "The Board may base its decision not only on direct testimony, medical findings, and other tangible evidence, but also on the Board's experience, judgment, observations, unique or peculiar facts of the case, and inferences drawn from all of the above." *Rogers & Babler*, 747 P.2d at 533–34.

Adams argues that Dr. Horning's deposition testimony, when considered as a whole, is ambiguous on the question of the source of his present disability. Dr. Horning recommended that Adams seek other types of employment and obtain a disc-fusion operation. However, assuming that Adams did not want to go forward with surgery and thereafter claimed he could not go back to work, Dr. Horning stated "[i]f he should refuse to [have surgery] then I think one might fall back and say well, there is evidence of back disease so maybe his claim that he can't continue without surgery to do that kind of job could have merit." He also stated that he would defer to the patient's judgment in this case as to when it is appropriate to quit such manual labor. The Board noted that Dr. Horning recommended alternative employment but it found that such testimony was insufficient to support a finding that the employee was totally disabled. In this context, we do not consider Dr. Horning's testimony to be ambiguous. The Board chose to rely on the doctor's unambiguous opinion that the back condition had returned to the same state in which Adams returned to the North Slope in 1985.

Adams argues that the fact that his back had returned to its pre-December 1985 condition does not establish his lack of disability. He relies on the fact that he continued to work in his injured condition solely to earn enough hours to vest in his retirement program. Some courts have found that continued employment in the face of a painful injury does not prevent an award of temporary total disability benefits.[6] However, the Board concluded in its judgment that Adams' past ability to work precluded a finding of total disability. A reviewing court may not "displace the Board's choice between two fairly conflicting views even though the court [could] justifiably have made a different choice had the matter been before it de novo." *Delaney*, 693 P.2d at 863 n. 2. In finding that Adams' disability was no longer work-related, the Board was justified in relying on Dr. Horning's opinion that the back condition had returned to its 1985 condition. We conclude that the board's determination is supported by substantial evidence and we therefore affirm the board's determination.

The judgment of the superior court is REVERSED and the decision of the Workers' Compensation Board denying temporary total disability compensation to Adams is AFFIRMED.

RABINOWITZ, Justice, dissenting in part.

I agree with the court's holding that travel for medical treatment of work-related injuries is covered under the Alaska Workers' Compensation Act. I disagree

---

6. *See American Sur. Co. v. Kizer*, 212 Tenn. 328, 369 S.W.2d 736 (1963).

with the court's affirmance of the Board's determination that Adams' five-day delay in returning home to Wasilla ended the compensability of his return trip.

In reaching its conclusion that Adams' delay terminated the compensability of the return trip, the Board explicitly held "that a dual-purpose medical treatment return trip must be undertaken 'as soon as reasonably possible' in order to be covered." Applying this standard the Board concluded that

> the return trip delay of five days precludes a finding that the return trip began as soon as reasonably possible. The employee forthrightly admitted that the delay was attributable to his personal business rather than weather, transportation, physical limitation, or other constraints. The Board finds that a delay of five days in returning to Wasilla from a medical examination in Anchorage, under the employee's circumstances, was too long. The Board finds that due to this delay the return trip, and injuries arising from the resulting auto accident, are not compensable.

From the foregoing, it is clear that the Board adopted a test which requires the employee to undertake the return trip "as soon as reasonably possible." In affirming the Board's determination that Adams' five-day delay in Anchorage ended the compensability of his return trip, the court implicitly rejects the Board's "as soon as reasonably possible" test. In its place the majority employs a multi-part balancing test which this court first articulated in *Anchorage Roofing Co., Inc. v. Gonzales,* 507 P.2d 501 (Alaska 1973). In that case we said:

> [T]here is the need ... to balance a variety of factors such as the geographic and durational magnitude of the deviation in relation to the overall trip, past authorization or toleration of similar deviations, the general latitude afforded the employee in carrying out his job, and any risks created by the deviation which are causally related to the accident.

*Id.* at 507.

The *Anchorage Roofing* test differs significantly from the "as soon as reasonably possible" test employed by the Board. I am therefore of the view that the case should be remanded to the Board for purposes of redetermining the compensability of Adams' return trip under the criteria set forth in *Anchorage Roofing.*