### UGANIK FISHERIES, Inc. v. ALASKA INDUSTRIAL BOARD et al.
### No. 5990–A.

United States District Court. D. Alaska.
First Division. Juneau.
Jan. 27, 1949.

Faulkner, Banfield & Boochever, of Juneau, Alaska, for plaintiff.

Ralph J. Rivers, of Juneau, Alaska, for Alaska Industrial Board.

William L. Paul, Jr., of Juneau, Alaska, for defendant Edor Mehline.

FOLTA, District Judge.

Plaintiff has appealed from a decision of the Alaska Industrial Board awarding compensation to Edor Mehline for an injury sustained August 3, 1947, at Uganik Bay, Alaska.

Mehline's employment as a carpenter by the San Juan Fishing and Packing Co. at Uganik Bay, Alaska, for the fishing season of 1947, was governed by the terms of a contract entered into between his union and the Alaska Salmon Industry, Inc., representing various packers, including apparently San Juan Fishing and Packing Co. and the Uganik Fisheries, Inc. Under this contract the pay of carpenters, including that of defendant, was fixed at $364.05

a month for a six-day work-week of forty-eight hours, with premium pay for overtime and for work done on Sundays and holidays. In addition board, lodging and transportation were required to be furnished by the employer, and Mehline's pay was to begin upon his departure from Seattle and terminate upon his return to that port. Pursuant to this, and apparently a supplemental, contract between him and San Juan, Mehline worked as a carpenter at the cannery of that company at Uganik Bay until July 6th, when he was transferred to the herring reduction plant of the Uganik Fisheries, Inc., across the bay. Between July 6th and August 3rd he worked on three of the five Sundays and in addition put in twenty-four hours' overtime. On Sunday, August 3rd, there being no work for the carpenters, Mehline with other employees proceeded by a rowboat belonging to a fellow-employee to the plant of the San Juan Fishing and Packing Co., where he formerly worked, to buy some work clothes and ascertain if a combination square, ordered some weeks before, had arrived. When he stepped out of the boat to the float maintained by San Juan, he slipped and fell, breaking a wrist.

Mehline filed a claim for compensation against "Uganik Fisheries, Inc., a *subsidiary* of San Juan Fishing and Packing Co." The Board found that both plants were run by the superintendent of San Juan, and that the latter company handled and approved all time and payroll records in its own name and maintained the only commissary at which clothing and tools could be obtained, and concluded upon this and other facts found that the injury arose out of and was sustained in the course of Mehline's employment because the trip was made for the "concurrent benefit of Uganik and Mehline" and also because it occurred upon "adjacent premises."

The finding that the trip was made for the concurrent benefit of both appears to rest, so far as benefit to the employer is concerned, on the proposition that where the

employee on his day off makes a trip to a store to obtain articles with which he is required to supply himself in order to do his work, the trip is for the employer's benefit. While it may be that anything the employee does for his comfort or to maintain himself will ultimately benefit the employer in a remote sense, manifestly the benefit must be direct and immediate. If the employer were required to supply work clothes and tools and had dispatched an employee to a distant store to buy them, any injury received in the store or en route would clearly be one received in the course of his employment. And it would not be necessary to invoke the adjacent premises doctrine. Here it appears that the employer was not required to furnish carpenters with clothes or tools, and since Mehline had been seasonally employed in the same capacity in Alaska since 1921, it may be presumed that he supplied himself with these articles when he left Seattle and that the need for further clothing and the square would not in any event occur so suddenly as to become an emergency interrupting his work and requiring him to make the trip during working hours for the purpose of replacing them.

The Board's conclusion that the trip was made partly for the benefit of the employee also is based on the finding that the trip was made for recreation as well.

The test to be applied in determining whether a trip is the employer's or employee's is that laid down by Justice Cardozo in the matter of Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181, 182, as follows:

"A servant in New York informs his master that he is going to spend a holiday in Philadelphia, or perhaps at a distant place, at San Francisco or at Paris. The master asks him while he is there to visit a delinquent debtor and demand payment of a debt. The trip to Philadelphia, the journey to San Francisco or to Paris, is not a part of the employment. A different question would arise if performance of the

service were to occasion a detour, and in the course of such detour the injuries were suffered. * * *

"We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled. * * * The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. * * * If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk."

Here, as has been seen, not only did the employee have no errand to perform for the employer but it does not appear that the employer even knew that Mehline was going to make such a trip. Tested by the rule declared by Justice Cardozo, the conclusion that Mehline's trip to the commissary was for the benefit of the employer is erroneous. Industrial Commission of Ohio v. Ahern, 119 Ohio St. 41, 162 N.E. 272, 59 A.L.R. 367; Traders & General Ins. Co. v. Ratcliff, Tex. Civ.App., 54 S.W.2d 223; Mulligan v. Oakes, 128 Conn. 488, 23 A.2d 870; Barragar v. Industrial Commission, 205 Wis. 550, 238 N.W. 368, 78 A.L.R. 679.

 The argument based on the proposition that Uganik is a mere subsidiary of San Juan seems illogical and difficult to follow, and its materiality is not perceived. Assuming that it is a subsidiary, the answer is that the proceeding for compensation was not brought against San Juan and that, even so, the liability of an employer does not extend to any other plant than the one in which the employee is employed unless he is at the other plant on his employer's business or as an incident of his employment, and in such circumstances

it would obviously be quite immaterial who owned or operated the plant at which the injury was received. The relationship between Uganik and San Juan would, therefore, seem to be wholly without significance.

■ Although the finding of the Board that Mehline was "virtually" subject to call falls short of finding that he *was* subject to call at all times, yet it appears to be the basis for the conclusion that the injury was sustained in the course of the employment. Aside from the fact that there is no evidence to support such a finding, it clearly appears that his employment did not differ from that of any person employed at a monthly salary with fixed hours who is subject to call in emergency or allowed to work overtime when there is any extra work to be done. This, however, does not justify placing him in the category of firemen, police officers, domestic servants and others who are actually subject to call twenty-four hours a day. Moreover it appears that it was known on Saturday, August 2nd, that there would be no work on the next day and that Mehline was entirely on his own on Sunday, August 3rd.

■ The argument that the case falls within the adjacent premises doctrine is based on the proposition that Uganik and San Juan were under a common ownership or operation, and that, hence, the premises of the latter must be deemed to be those of the former also. Assuming that the premises of a parent corporation could be considered to be those of the subsidiary which would, incidentally, appear to be reasoning in reverse, it is well established that the premises sought to be brought within the rule must actually be adjacent. Here the two plants were separated by a distance of one mile by water and two miles by land. There appears to be no authority which hurdles such space and holds that a place beyond it is, nevertheless, adjacent. Even Horovits, the foremost advocate of a liberal judicial attitude in construing statutes of this kind, does not go so far as to argue that an injury sustained under the circumstances here disclosed is

compensable. The adjacent premises doctrine, with its limitations, is illustrated in Cudahy Packing Co. v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366, 30 A.L.R. 532, and Bountiful Brick Co. v. Giles, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507, 66 A.L.R. 1402. In each case the employee was required to cross a railroad to enter and leave the plant in which he was employed, and in each case the award of compensation was attacked on the ground that the injury occurred off the premises and not in the course of the employment. In affirming these decisions the Supreme Court said in the first case cited, 263 U.S. at page 426, 44 S.Ct. at page 155, 68 L.Ed. 366, 30 A.L.R. 532:

"Here the location of the plant was at a place so situated as to make the customary and only practicable way of immediate ingress and egress one of hazard. Parramore could not, at the point of the accident, select his way. He had no other choice then to go over the railway tracks in order to get to his work; and he was in effect invited by his employer to do so. And this he was obliged to do regularly and continuously as a necessary comcomitant of his employment, resulting in a degree of exposure to the common risk beyond that to which the general public was subjected. The railroad over which the way extended was not only immediately adjacent to the plant, but, by means of switches, was connected with it, and in principle it was as though upon the actual premises of the employer."

And in the second case, 276 U.S. at page 158, 48 S.Ct. at page 222, 72 L.Ed. 507, 66 A.L.R. 1402:

"If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance. In other words,

the employment may begin in point of time before the work is entered upon and in point of space before the place where the work is to be done is reached. Probably, as a general rule, employment may be said to begin when the employee reaches the entrance to the employer's premises where the work is to be done; but it is clear that in some cases the rule extends to include adjacent premises used by the employee as a means of ingress and egress with the express or implied consent of the employer."

] Clearly the plant of San Juan, even assuming it was owned or operated by Uganik, could not be said to be in such proximity and relation as to be in effect a part of the Uganik plant located across the bay. The isolation stressed in claimant's brief and the fact that there was no other store where clothing could be bought do not warrant a different conclusion. Liability depends not upon such factors, but upon whether an errand, such as that under discussion here, can be said to be an incident of the employment. If an affirmative answer is required, then the liability of every employer is extended to cover all risks encountered by his employees in shopping on their own time for anything required or useful in the performance of their duties.

It is the opinion of the Court that the injury neither arose out of nor in the course of the employment. Accordingly, the decision of the Board is reversed.