**Janet A. SEVILLE, Appellant,**

v.

**HOLLAND AMERICA LINE WESTOURS, INC.,
Appellee.**

**No. S–8270.**

Supreme Court of Alaska.

May 14, 1999.

Charles W. Coe, Anchorage, for Appellant.

Robert P. Blasco, Robertson, Monagle & Eastaugh, Juneau, for Appellee.

Before: MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

BRYNER, Justice.

## I. INTRODUCTION

As Janet A. Seville left work, she slipped and injured herself on an icy public sidewalk outside the building occupied by her employ-

er, Holland America Line Westours, Inc. (Holland America). Seville sought workers' compensation benefits, but the Alaska Workers' Compensation Board denied her claim, concluding that the sidewalk was neither part of Holland America's premises nor a "special hazard" of her employment. We reverse, concluding that, because the Anchorage Municipal Code required Holland America to keep the sidewalk free of ice, Seville's injury was work related.

## II. FACTS AND PROCEEDINGS

In December 1995 Janet Seville worked as a telemarketer for Holland America in the Signature Building at the corner of H Street and West Fourth Avenue in downtown Anchorage. Holland America leased office space in the Signature Building from its owner, Cook Inlet Region, Inc. (CIRI). The building housed several other business tenants, including a law firm, an architect firm, and an athletic club. On the afternoon of December 5, Seville finished her shift and left the building to catch a ride home with a friend who had pulled up in a car on Fourth Avenue. Several steps outside the building's Fourth Avenue exit, Seville slipped on the icy sidewalk and fell, breaking her leg and ankle.

Unable to return to work until February 5, 1996, Seville claimed workers' compensation benefits. Holland America contested her claims. Following a hearing, the Board denied benefits, concluding that Seville did not injure herself in the course and scope of her employment because her accident occurred off Holland America's premises and was not caused by a special hazard of employment. The superior court affirmed the Board's decision. Seville appeals.

## III. DISCUSSION

The Board determined that the sidewalk outside the Signature Building, where Seville sustained her injury, was not a part of Holland America's business premises. Because the "coming and going" rule ordinarily limits workers' compensation benefits to on-premises injuries, the Board concluded that Seville would be entitled to benefits only if her case fell within the special hazard exception to the rule. The Board further concluded that Seville's case did not fall within the special hazards exception. On appeal, Seville first contends that the sidewalk adjacent to the Signature Building is a part of Holland America's business premises and that she should thus be compensated regardless of whether the special hazard exception applies to her case. She argues alternatively that her case falls within the special hazard exception. We consider each argument in turn.

### A. Standard of Review

Seville's appeal presents undisputed facts, raising legal questions concerning the scope of workers' compensation coverage; since these questions do not implicate the Board's special expertise, we apply the substitution of judgment standard in reviewing the Board's decision.[1] We give no deference to the superior court's decision when that court acts as an intermediate court of appeal.[2]

### B. The Board Correctly Determined That Seville's Accident Did Not Occur on Holland America's Premises.

The Alaska Workers' Compensation Act, AS 23.30.005–.395, "provides for a comprehensive system of compensation for injuries to employees."[3] A compensable injury is defined as one "arising out of and in the course of employment."[4] "Arising out of and in the course of employment" is defined as "employer-required or supplied travel to and from a remote job site; activities performed at the direction or under the control of the employer; and employer-sanctioned activities at employer-provided facilities; but

1. Sokolowski v. Best Western Golden Lion Hotel, 813 P.2d 286, 289 n. 1 (Alaska 1991) (citing Kodiak Oilfield Haulers v. Adams, 777 P.2d 1145, 1148 (Alaska 1989)); see also Madison v. Alaska Dep't of Fish and Game, 696 P.2d 168, 173 (Alaska 1985).

2. See Handley v. State, Dep't of Revenue, 838 P.2d 1231, 1233 (Alaska 1992).

3. Sokolowski, 813 P.2d at 289.

4. AS 23.30.395(17).

excludes ... activities of a personal nature away from employer-provided facilities[.]"[5]

This court has previously recognized that these provisions embody the "going and coming rule," under which "travel between home and work is considered a personal activity, and injuries occurring off the work premises during such travel are generally not compensable under workers' compensation acts."[6] The basic going and coming rule is an aspect of the premises rule;[7] barring exceptional circumstances, the going and coming rule simply means that "for an employee having fixed hours and place of work, going to and from work is covered only *on the employer's premises.*"[8] An employer's premises are generally held to encompass "the entire area devoted by the employer to the industry with which the employee is associated[,]"[9] and usually include common areas of a multi-tenant building where "the employer has some kind of right of passage[.]"[10]

But the employer's premises ordinarily stop there; proximity alone does not justify an extension:

It is a familiar problem in law, when a sharp, objective, and perhaps somewhat arbitrary line has been drawn ... to encounter demands that the line be blurred a little to take care of the closest cases. ... [But questions posed by such demands]

have led the great majority of courts, for reasons that are perhaps as much administrative necessity as logic, to adopt the premises rule. There is a logic in the rule, of course, in that, while the employee is on the employer's premises, the connection with the employment environment is physical and tangible. Moreover, the rule has stood the test of time[.][11]

Seville nonetheless contends that the sidewalk is or should be considered part of Holland America's business premises. She asserts initially that under the early Alaska decision of *Uganik Fisheries v. Alaska Industrial Board,*[12] an employer's premises extend to adjacent areas used as a means of ingress and egress.[13] But *Uganik* does not support a general extension of employers' premises to include adjacent areas of ingress and egress; to the extent that *Uganik* addresses the issue, that decision, and the cases it cites,[14] stand at most for the more limited proposition that an exception to the going and coming rule should apply when an area adjacent to an employer's premises subjects a worker to a special hazard of employment that actually causes injury.[15]

Seville also argues that the sidewalk should be considered a part of Holland America's business premises because the company had control over its maintenance

---

**5.** AS 23.30.395(2).

**6.** *Sokolowski,* 813 P.2d at 289 (citing 1 A. Larson, *Workmen's Compensation* § 15 (Desk ed.1990)).

**7.** *See* 1 A. Larson, *Larson's Workers' Compensation Law* §§ 15.10 & 15.11, at 4–3 (1998).

**8.** *Id.* § 15.11, at 4–3 (footnotes omitted); *see also Sokolowski,* 813 P.2d at 289.

**9.** Larson, *supra* note 7, § 15.41, at 4–99.

**10.** *Id.* § 15.43, at 4–132.

**11.** *Id.* § 15.12(a), at 4–13 to 4–14. Professor Larson goes on to warn:

[A]nd any court which is tempted to forsake [the premises rule] for some supposedly more equitable rule would do well to ponder the following passage from Sinbad the Sailor:
And, lo, the master of the ship vociferated and called out, threw down his turban, slapped his face, plucked his beard, and fell down in the hold of the ship by reason of the violence of his grief and rage. So all the

merchants and other passengers came together to him and said to him, 'O master, what is the matter?' And he answered them: 'Know, O Company, that we have wandered from our course, having passed forth from the sea in which we were, and entered a sea of which we know not the routes.'
*Id.* at 4–14.

**12.** 12 Alaska 242 (D.Alaska 1949).

**13.** *Id.* at 245.

**14.** In discussing the adjacent premises doctrine, *Uganik* relies primarily on *Bountiful Brick Co. v. Giles,* 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507 (1928) and *Cudahy Packing Co. of Neb. v. Parramore,* 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366 (1923). *See Uganik,* 12 Alaska at 249.

**15.** *Uganik,* 12 Alaska at 249. *Cf.* Larson, *supra* note 7, § 15.13(a), at 4–30 & n. 23 (citing *Parramore* and *Giles* in support of the proposition that the special hazard rule "has been accepted by the majority of jurisdictions in some degree.").

and used it for business purposes. Specifically, Seville asserts that Anchorage Municipal Code (AMC) 24.80.090 extended the boundaries of Holland America's business premises by making the company responsible for removing snow and ice from the sidewalk.[16] In addition, Seville points out that Holland America's lease allowed the company to maintain an advertising awning that extended beyond the boundaries of the Signature Building, overhanging the Fourth Avenue sidewalk near the area where she slipped and fell. Testimony at the evidentiary hearing suggested that Seville may have slipped on ice caused by water dripping onto the sidewalk from the awning. Seville characterizes the awning as further evidence of Holland America's control over the sidewalk, and as an additional factor supporting the extension of the business premises.

We are unpersuaded by Seville's argument that these factors warrant a general extension of Holland America's premises to the adjacent sidewalk. As we have explained above, the premises rule does not generally encompass adjoining sidewalks.[17] While the rule's sharp line is "perhaps somewhat arbitrary,"[18] "[t]here is a logic in the rule,"[19] and "[it] has stood the test of time[.]"[20] To reiterate Professor Larson's point, "[t]he real reason for the premises rule is, and always has been, the impracticality of drawing another line[.]"[21] As we discuss more fully below in part III.C, Holland America's legal obligation to keep the sidewalk free of ice and snow and the fact that it installed an advertising awning that overhung a portion of the sidewalk and potentially contributed to its icy condition are relevant for purposes of determining whether the particular circumstances surrounding Seville's injury place it within an exception to the premises rule. But because Holland America's awning and

its legal duty to keep the sidewalk clear of ice do not establish that Holland America exercised general control over the adjacent sidewalk for business purposes, these factors do not support the broader conclusion that the sidewalk was actually part of Holland America's premises.

To rule that Holland America's duty to prevent icy conditions on the adjacent sidewalk warrants a general extension of its business premises would necessarily imply that any injury on the sidewalk would be an on-premises injury and that Seville would therefore have been entitled to compensation regardless of whether her injury was caused by the sidewalk's slippery condition. As Holland America argues, the consequences of such a ruling would be anomalous:

> What would happen if [Seville] had fallen in the same spot in June? There is no ice on the sidewalk in June, so the Municipal Code would not apply. According to Seville, is the sidewalk only part of [Holland America's] business premises during certain months? According to Seville, is the sidewalk only part of [Holland America's] business premises when there is in fact snow and/or ice on the sidewalk? And how much?

We find Holland America's argument persuasive. In our view, the Board correctly determined that Holland America's business premises did not encompass the Signature Building's adjacent sidewalk; the Board correctly recognized that Seville's injury would be compensable only if an exception to the going and coming rule applied to her case.

C. *The Board Erred in Finding the Special Hazard Exception Inapplicable.*

Seville argues that, even if Holland America's premises did not extend to the adjacent

---

16. AMC 24.80.090(A) provides: "An occupant of land adjacent to a public sidewalk shall be responsible for the removal of any accumulation of snow and the removal or treatment of any ice that may accumulate, form, or be deposited thereon."

17. *See* Larson, *supra* note 7, § 15.22(e), at 4–86 (stating that, absent special circumstances, "injuries on nearby sidewalks and streets are not within the premises rule").

18. *Id.* § 15.12(a), at 4–13.

19. *Id.* § 15.12(a), at 4–14.

20. *Id.*

21. *Sokolowski v. Best Western Golden Lion Hotel,* 813 P.2d 286, 290–91 (Alaska 1991) (quoting Larson, *supra* note 6 § 15.12(b), at 4–13 to 4–14).

sidewalk, her injury is compensable under the special hazard exception to the going and coming rule.

In *Sokolowski*, this court described several exceptions to the going and coming rule, which allow an injured worker to receive compensation even if the injury did not occur on the employer's premises.[22] We noted that Alaska had already recognized the "special errand" and "remote site" exceptions;[23] for the first time, we expressly adopted the "special hazard" exception.[24]

■ Citing Professor Larson, we explained that the special hazard exception has been applied when the "off-premises point at which the injury occurred lies on the only route, or at least on the normal route, which employees must traverse to reach the plant, and that therefore the special hazards of that route become the hazards of the employment."[25] We then articulated a three-part test for determining whether the special hazard exception applies in such cases: first, there must be a causal relation between the employment and the injury; second, the hazard that causes the injury must be "distinctive in nature or quantitatively greater than risks common to the public;"[26] and, third, the employee must be on "a usual or normal route to work."[27]

The claim for compensation in *Sokolowski* was filed by a worker who had been injured while walking across an icy street on her way to work at an Anchorage hotel.[28] The hotel did not allow its employees to park in its parking lot.[29] They parked in a lot directly across the street.[30] Because the nearest intersection was half a block away, they often crossed the street in the middle of the block.[31]

Addressing the second (quantitatively greater risk) element of the three-part test, we observed that "slipping on an icy street in Anchorage in winter is a common hazard." [32] We further noted that an employee's mere increased frequency of travel over an icy road as a result of employment would not elevate the risk to a special hazard.[33] We nevertheless concluded that crossing the street in the middle of the block might have exposed hotel employees to a quantitatively greater risk than the general public.[34] Because the Board had not addressed this possibility, we directed it to determine on remand whether the mid-block crossing was a "special hazard" under these standards.[35]

■ In the present case, the Board considered, but rejected, the special hazard exception. Although it found that Holland America had a duty under the Anchorage Municipal Code to keep the adjacent sidewalk clear of ice and that Seville's injury actually had been caused by the sidewalk's icy condition, the Board did not deem these circumstances alone sufficient to trigger the special hazard exception. The Board pointed out that Seville's injury occurred on a busy public sidewalk. Citing this court's decision in *Sokolowski*, the Board noted that icy streets are a common hazard during winter in Anchorage. In the Board's view, because an icy spot on the Fourth Avenue sidewalk

22.  *Sokolowski*, 813 P.2d at 289–90.

23.  *Id.* (citing *State, Dep't of Highways v. Johns*, 422 P.2d 855 (Alaska 1967)) (holding that an employer's request that an employee drive his own car to an alternate work site, with pay and gas, constituted a special errand); *M–K Rivers v. Schleifman*, 599 P.2d 132 (Alaska 1979) (recognizing a remote site exception).

24.  *Sokolowski*, 813 P.2d at 290.

25.  *Id.* (quoting 1 A. Larson, *supra* note 6, § 15.13, at 4–22).

26.  *Sokolowski*, 813 P.2d at 291 (quoting *General Ins. Co. of America v. Workers' Compensation Appeals Bd.*, 16 Cal.3d 595, 128 Cal.Rptr. 417, 546 P.2d 1361, 1364 (1976)).

27.  *Sokolowski*, 813 P.2d at 291.

28.  *Id.* at 288–89.

29.  *Id.*

30.  *Id.*

31.  *Id.*

32.  *Id.* at 293.

33.  *Id.* at 293 n. 9.

34.  *Id.* at 293–94.

35.  *Id.* at 294.

did not expose Seville to a quantitatively greater risk than would be experienced by a member of the general public who walked past or into the Signature Building, her injury did not result from a special hazard.

Seville does not dispute that icy conditions are a common winter hazard in Anchorage; she nonetheless maintains that the ice on the Fourth Avenue sidewalk should be deemed a special hazard of her employment because her employer contributed to the hazard by failing to perform its legal duty to keep the sidewalk free of ice and by allowing water to drip onto the sidewalk from its awning.

In response, Holland America suggests that, even if it had a legal duty to clear ice and breached that duty, the second element of *Sokolowski*'s special hazard test would not be met, since Seville was never exposed to a quantitatively greater risk of falling on the icy Fourth Avenue sidewalk than was any other member of the general public who commonly walks the avenue. Holland America insists, moreover, that Seville has failed to establish that its awning contributed to her injury; in any event, according to Holland America, she easily could have taken alternative routes to avoid any danger from the awning.

On balance, we find Seville's argument more persuasive. As Professor Larson explains, the underlying rationale of the special hazard exception is that a "[c]laimant has been subjected to a particular risk because of his employment": [36]

> We have, then, a workable explanation of the exception to the premises rule: it is not proximity, or reasonable distance, or even the identifying of surrounding areas with the premises: it is simply that, when a court has satisfied itself that there is a distinct "arising out of" or causal connection between the conditions under which claimant must approach and leave the

premises and the occurrence of the injury, it may hold that the course of employment extends as far as those conditions extend.[37]

The "quantitatively greater risk" requirement we articulated in *Sokolowski* subserves this principle; [38] it is not immutable and must be understood in context. *Sokolowski* dealt with a common hazard—icy public roads—that the employer had no legal duty to control. In such cases, the requirement of a "quantitatively greater risk" plays an essential role in ensuring the work-relatedness of injury-causing hazard.

By contrast, when an employer, in connection with the operation of its business, is charged with a legal duty to control or abate a specific hazard in the area adjacent to its premises—even a common hazard to which the general public is exposed—the legal duty itself supplies the necessary element of work-relatedness; employees necessarily rely on the employer's performance of the duty as one of "the conditions under which [they] must approach and leave the premises." [39] And when the hazard results in an injury to a worker who is coming to work or going home, "there is a distinct 'arising out of' or causal connection" to the course of employment.[40]

Professor Larson expressly confirms this view. After stating that the principle of work-related risk—being "subjected to a particular risk because of ... employment" [41]— explains the special hazard exception and justifies its invocation,[42] Larson goes on to criticize, as violating this principle, cases that draw an arbitrary distinction "between those off-premises injuries which occur on private property, such as railway rights-of-way or short-cuts across neighboring lots, and those which occur on public streets and side-

---

**36.** Larson, *supra* note 7, § 15.15, at 4–72.

**37.** *Id.* at 4–72 to 4–73 (footnote omitted).

**38.** *See Sokolowski,* 813 P.2d at 293–94 (discussing "quantitatively greater risk" requirement).

**39.** Larson, *supra* note 7, § 15.15, at 4–72 to 4–73.

**40.** *Id.*

**41.** Larson, *supra* note 7, § 15.15, at 4–72.

**42.** *Id.* at 4–72 to 4–73.

walks."[43] Then, to illustrate the kind of publicly occurring off-premises injury that is sufficiently work related to qualify for an exception, Larson describes a worker falling on an icy public sidewalk that the employer has a duty to maintain:

> An example of expansion of the premises concept to coincide with the range of employment-related risk is · seen in cases granting compensation for a fall on an icy sidewalk which it is the employer's duty to keep clear of ice, or which the employer has made a practice of keeping clear of ice.[44]

In denying Seville's claim, the Board considered the above-quoted passage from Larson's treatise, but dismissed it as a "sweeping statement" that was unsupported by the cases that Larson has cited. In the Board's view, "in each of the cases cited there was another factor, such as use of the sidewalk to display merchandise, the sidewalk led only to the employer's premises, the employer was the sole occupant of a building, or the employer actually did the sidewalk maintenance[.]"

In our view, however, the cases cited by Larson do not support the Board's implicit conclusion that the special hazard exception requires "another factor"—something besides a legal duty to clear the sidewalk. We find it difficult to read these cases as standing for this proposition, or any general proposition at all, for that matter; rather, their widely divergent results reflect the fact-intensive nature of the special hazard exception inquiry and the differing laws of different jurisdictions.[45] More significant than these cases is Larson's unequivocal assertion that an exception to the going and coming rule is justified when a worker falls on an icy sidewalk that the employer has a duty to maintain.[46]

But most significant of all is the underlying rationale that Larson offers to support his assertion: the proposition that coverage should be expanded beyond an employer's premises when an injury results from exposure to work-related risk. As we have already explained, when an employee who is coming to work or going home slips on an icy sidewalk that the employer has a legal duty to keep clear, the necessary element of work-relatedness is present, and Larson's rationale justifies extending coverage regardless of the presence of "another factor."

Here, the Board expressly found, and Holland America does not directly contest, that AMC 24.80.090(A) required Holland America to keep the Fourth Avenue sidewalk clear of snow and ice. The Board's conclusion is correct. As we have already pointed out, the ordinance makes occupants of land adjacent to public sidewalks responsible for the removal of "any accumulation of snow and the removal or treatment of any ice that may accumulate" on the sidewalk. Under AMC 24.80.100, "occupant" is defined as the "person presently entitled to possession or control of land adjacent to a public sidewalk, including but not limited to an owner, tenant, lessee, sublessee, or subtenant." Because Holland America, as a leasehold tenant in the Signature Building, unquestionably was entitled to possession and control of land adja-

---

**43.** *Id.* § 15.21, at 4–74.

**44.** *Id.* § 15.22(b), at 4–78.

**45.** For example, in *Frost v. S.S. Kresge Co.*, 299 N.W.2d 646, 650 (Iowa 1980), the court held that an employer's responsibility to remove snow coupled with the fact that the employer sometimes used the sidewalk to display and sell merchandise justified allowing an exception to the going and coming rule; in *Beck v. Edison Bros. Stores, Inc.*, 657 S.W.2d 326, 328 (Mo.App.1983), an employee who slipped on an icy sidewalk adjacent to her place of work alleged that the employer was negligent in removing snow and the court held that she was not in the scope of employment, thus allowing her to recover in tort; in *Reid v. Coastal Abrasive & Tool Co.*, 26 A.D.2d 862, 273 N.Y.S.2d 954, 955 (1966), the court allowed compensation for an employee's slip on an adjacent icy sidewalk when the employer was the sole tenant of the building and the employer's lease stipulated that he had to keep the sidewalk clear; in *Kyle v. Davol, Inc.*, 121 R.I. 79, 395 A.2d 714, 715 (1978), the court held that though the employer was responsible for clearing ice on an adjacent sidewalk, benefits should be denied for an employee's fall because the situation did not warrant expanding the going and coming rule.

**46.** Larson, *supra* note 7, § 15.22(b), at 4–78.

cent to the Fourth Avenue sidewalk,[47] the ordinance was applicable.

■ Holland America nevertheless argues that it discharged its legal duty by contracting in its lease to have the sidewalk maintained by its landlord, CIRI. Holland America's regional manager testified that the terms of the company's lease obligated CIRI to keep the sidewalk free of ice and snow.[48] According to him, Holland America never undertook to do such work itself but would call CIRI on occasion if it believed that there might be a hazard. CIRI would then contact an entity with which it had a contract to perform the needed maintenance. Holland America insists that by contacting CIRI, it fulfilled any obligation that it had under the ordinance. The Board appears to have credited this argument; it expressly mentioned the fact that the company had never actually undertaken to maintain the sidewalk as a factor that weighed against treating the sidewalk as Holland America's premises.

But this argument is unconvincing for several reasons. The lease provision requiring CIRI to be primarily responsible for clearing ice implicitly vested Holland America with a right to insist that CIRI comply with its contractual obligation; Holland America actually did request CIRI to take action on several occasions. In a very real sense, then, Holland America retained and actually undertook to exercise control over the condition of its sidewalk. Moreover, while Holland America could delegate contractually to CIRI

the job of keeping the sidewalk free of ice and snow, its delegation of performance did not necessarily relieve it of its legal duty to perform.[49]

Finally, whether Holland America fulfilled or breached its legal duty to clear the sidewalk is immaterial for purposes of determining whether Seville's accident was work related, and therefore, compensable under Alaska's workers' compensation provisions. The purpose of workers' compensation is to provide a "simple and speedy remedy" based on work-relatedness rather than on employer negligence.[50] Thus, the determining factor in establishing the necessary element of work-relatedness is the existence of the duty itself, not the breach of that duty.

Holland America's legal duty to keep the Fourth Avenue sidewalk free of ice arose as an incident of its occupation of adjacent business premises, where Seville was employed. This legal duty, coupled with Holland America's retention and exercise of contractual authority to ensure that CIRI kept the sidewalk clear, provides an adequate nexus of work-relatedness—a "distinct 'arising out of' or causal connection between the conditions under which [Seville] approach[ed] and le[ft] the premises and the occurrence of the injury[.]"[51]

We emphasize that our ruling is narrowly confined to the workers' compensation context, where compensability hinges on work-relatedness arising from the existence a duty, rather than on a breach of the duty or a

---

47. *Cf. Black's Law Dictionary* 1465 (6th ed.1990) (defining "tenancy" as involving "an interest in realty ... [with] possession exclusive even of that of landlord, except as the lease permits landlord's entry[.]"); *Restatement (Second) of Property,* § 1.2 cmt. a (1977) (explaining that a tenancy cannot begin unless the tenant has a present right to possession).

48. The lease itself does not appear to be included in the appellate record, but there is no dispute concerning its provisions.

49. *See generally* 3 *Williston on Contracts* § 411, at 18–22 (3d ed.1960) (discussing delegation of duties). *Cf.* AS 45.02.210 ("A party may perform the party's duty through a delegate unless otherwise agreed ... [n]o delegation of performance relieves the party delegating of a duty to perform[.]") (Alaska's version of U.C.C. § 2–210).

See also *Restatement (Second) of Contracts* § 318(1), (3) (1981):

(1) An obligor can properly delegate the performance of his duty to another unless the delegation is contrary to public policy or the terms of his promise.
. . . .
(3) Unless the obligee agrees otherwise, neither delegation of performance nor a contract to assume the duty made with the obligor by the person delegated discharges any duty or liability of the delegating obligor.

50. *Sokolowski v. Best Western Golden Lion Hotel,* 813 P.2d 286, 290 (Alaska 1991) (citing *Fairbanks North Star Borough v. Rogers and Babler,* 747 P.2d 528, 531 (Alaska 1987)).

51. Larson, *supra* note 7, § 15.15, at 4–72 to 4–73.

determination that the duty is owed to any particular individual or class of individuals. By recognizing that AMC 24.80.090(A) required Holland America to keep the adjacent sidewalk clear of ice and snow and holding that this duty sufficed to establish a nexus between Seville's injury and her employment, we do not suggest that Holland America owed an actionable duty to protect members of the public from slipping on the Fourth Avenue sidewalk or that the municipal ordinance would generally entitle pedestrians who are injured by slipping on icy public sidewalks to sue occupants of adjacent land for breach of the duty it imposes. Indeed, there is authority on both sides of this question.[52]

■ Determining whether an exception to the going and coming rule should apply ordinarily presents a question of fact to be determined on a case-by-case basis.[53] But the facts in this case are undisputed. The Board's denial of benefits hinged on its interpretation of applicable law primarily on *Sokolowski*'s "quantitatively greater risk" requirement. The Board found that Seville's injury resulted from slipping on the icy Fourth Avenue sidewalk as she left work. It also expressly determined that the two remaining factors of *Sokolowski*'s three-factor special hazard test had been met—that Seville was on a usual route from work and that

her employment was a cause in fact of her injury.

■ The Board also ruled that the availability of two alternative exits precluded reliance on the special hazard exception. This aspect of the Board's ruling, however, appears to focus narrowly on Seville's suggestion that Holland America's awning might have resulted in the accumulation of ice. Our holding does not rely on this theory. Instead, we have found compensability based on the existence of Holland America's legal duty to keep the entire sidewalk adjacent to its premises clear of snow and ice. In any event, we conclude that the existence of alternative routes is immaterial in light of the Board's express finding that the Fourth Avenue exit was a normal route for going and coming—a finding that is amply supported by the record. While Holland America has suggested that Seville could have avoided the area under the awning, the Board did not find that her injury occurred because she "[chose] to ignore a safe convenient route ..., and [took] extra risks to save a few steps[.]"[54]

In these circumstances, the Board's decision presents legal, not factual questions.[55] We hold that the Board erred in ruling that Seville's injuries did not occur in the course and scope of her employment. Given the

---

**52.** *Compare, e.g., Burke v. Columbia Lumber Co. of Alaska,* 108 F.Supp. 743, 744 (D.Alaska 1952) ("Delegation [by the city of Sitka] of the duty to maintain does not ordinarily result in making the abutting owner liable to individual pedestrians for failure to comply; ... This ordinance was not designed to give an injured individual a right of action against a property owner violating its provisions, but rather was intended to assist the city in performing its municipal duties[.]"), *Carroll v. Jobe,* 638 N.E.2d 467, 469 (Ind.App.1994) ("[T]he duty cast upon abutting owners by snow and ice statutes or ordinances ... is a public one the breach of which [cannot be prosecuted by] private action[.]"), *Budahl v. Gordon and David Assoc.,* 323 N.W.2d 853, 854 (S.D.1982) ("The responsibility of the occupant is to the municipality. The occupant has no duty toward a pedestrian[.]"), and *Restatement (Second) of Torts* § 288(c) (1965) (stating that a legislative enactment does not create a standard of conduct for purposes of tort liability when its sole purpose is "to impose upon the actor the performance of a service which the state or any subdivision of it undertakes to give the public[.]"), *with Harris v.*

*Sanders,* 142 Or.App. 126, 919 P.2d 512, 515 (1996) (finding that municipal ordinance requiring abutting landowners to maintain sidewalks created duty to private persons), and *Restatement (Second) of Torts* § 286 (1965) (stating that a legislative enactment may create a standard of conduct for purposes of tort liability when the purpose of the provision is to protect a particular class of persons against a particular type of harm).

**53.** *See Cudahy Packing Co. of Neb. v. Parramore,* 263 U.S. 418, 424, 44 S.Ct. 153, 68 L.Ed. 366 (1923) ("Whether a given accident is so related or incident to the business must depend upon its own particular circumstances. No exact formula can be laid down which will automatically solve every case.").

**54.** *Sokolowski,* 813 P.2d at 294.

**55.** *Id.* at 289 n. 1 (citing *Kodiak Oilfield Haulers v. Adams,* 777 P.2d 1145, 1148 (Alaska 1989)); *see also Madison v. Alaska Dep't of Fish and Game,* 696 P.2d 168, 173 (Alaska 1985).

undisputed facts, Seville was entitled to compensation.

## IV. CONCLUSION

Because we conclude that the Board erred in denying Seville's claim, we REVERSE its order and REMAND for a determination of her compensable benefits.[56]

56. Seville has separately argued that the Board erred in failing to award attorney's fees. We need not address the issue. Having now prevailed on her claim for compensation, Seville will be entitled as a matter of course to an award of fees under AS 23.30.145(b).